[Civ. No. 2544. Second Appellate District, Division One.—February 20, 1920.]

## D. O. BISHOP, Respondent, v. JOHN B. DESCALZI, et al., Appellants.

[1] SALES—ACTION ON CONTRACT FOR SALE OF ORANGES—FINDINGS—EVIDENCE.—In this action to recover the balance due on a contract for oranges sold and delivered and to recover damages for breach of the same contract by refusal to receive a part of the oranges sold and to pay for the same, notwithstanding some conflict in the evidence concerning some facts, there was sufficient evidence to justify the finding of the trial court that the fruit in question was merchantable, free from splits, and conformed to the government test of 8 to 1, as required by the contract.

[2] ID.—NOTICE OF DAMAGE BY FROST—SUBSEQUENT DIRECTION TO DELIVER—WAIVER OF OBJECTION.—Where plaintiff, while such oranges were still on the trees, notified defendants that there had been some damage by frost and they, after the grove had been inspected by their authorized representative, directed plaintiff to pick and deliver the fruit, they were not justified in thereafter refusing to accept and pay for it because of the damage by the frost.

[3] ID.—DESTRUCTION OF CROP BEFORE PASSAGE OF TITLE—LIABILITY OF BUYER.—The defendants having wrongfully refused to accept

---

3. Burden of loss where goods sold are destroyed before payment is made, note, 22 Am. St. Rep. 866.

the fruit and it thereafter having been destroyed by a second frost, the fact that title to the fruit had not passed to them at the time of such destruction did not relieve them from liability to pay therefor, the loss having been due to their own acts.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge. Affirmed.

The facts are stated in the opinion of the court.

D. E. Perkins for Appellants.

Middlecoff & Feemster for Respondent.

CONREY, P. J.—Action by plaintiff to recover the sum of $590, balance due on a contract for oranges sold and delivered; also to recover the further sum of one thousand one hundred dollars damages for breach of the same contract by refusal of defendants to receive a part of the oranges sold and to pay for same. Judgment in favor of plaintiff on both demands, from which judgment defendants appeal.

The terms of the contract were as follows:

"Lindsay, California, October 21, 1916.

"This is to certify that the Descalzi Fruit Company of Pittsburg, have bought of D. O. Bishop his entire crop of Washington Navel oranges at 2 cts. per lb. delivered at the packing house, said crop to be merchantable fruit, free from splits and to conform to the government test of 8–1. $500.00 to be advanced, balance payable as cars are loaded."

Appellants claim: 1. That the evidence is insufficient to sustain that portion of the findings which found the oranges in question to be "merchantable fruit, free from splits and to conform to the government test of 8 to 1." 2. That the evidence is insufficient to sustain the last paragraph of finding X, which is as follows: "That on or about the twenty-seventh day of November, 1916, the defendants, through their agent, inspected said plaintiff's crop of Washington Navels mentioned in said contract of October 21, 1916, and accepted all the oranges in the lower ten acres of said grove consisting of about one hundred nine thousand, five hundred pounds (109,500) as complying with said contract of October 21, 1916, and instructed plaintiff to pick and deliver the same to defendants at the packing-house in Lindsay; that

immediately thereafter plaintiff commenced to pick said crop on said lower ten acres, and deliver it to the said defendants at said packing-house in Lindsay, and continued to so pick and deliver until on or about the fourth day of December, 1916, by which time plaintiff had picked and delivered fifty-four thousand five hundred (54,500) pounds of said oranges when said plaintiff was stopped and delayed in said picking and delivery by the acts of said defendants and thereafter on the sixth day of December, 1916, said defendants notified said plaintiff that defendants refused to accept any more of said crop of oranges or to pay for the same, and demanded of plaintiff that plaintiff return said five hundred ($500) dollars so advanced to him, and that thereafter on the morning of the eighth day of December, 1916, and before defendants had retracted said notice of refusal to accept said oranges and before said plaintiff could, with reasonable diligence have effected a resale thereof said fifty-five thousand (55,000) pounds of said crop of oranges still remaining on the trees unpicked were destroyed by frost without any fault on the part of the plaintiff.''

At the date of the contract the crop of oranges referred to in the contract was on the trees in a twenty-acre orchard of the plaintiff. In the evidence the orchard is referred to in three sections, respectively, as the upper ten acres, the south five acres, and the middle five acres. The oranges which were delivered and for which compensation is sought in the first cause of action in the complaint were taken from the lower five acres. The oranges which were not delivered and for which compensation is sought in the second cause of action were grown on the middle five acres. No recovery is sought on account of oranges grown on the upper ten acres.

At the time when the contract was made the defendants paid to the plaintiff the sum of five hundred dollars as provided in the contract. Defendants' answer contains a counterclaim for said sum of five hundred dollars.

On the thirteenth and fourteenth days of November a frost occurred in plaintiff's orange grove whereby the fruit in the lower part of the grove was damaged. Plaintiff gave information of that fact to Mr. A. E. Walkden, who represented the defendants in all of these transactions, and Mr. Walkden stated he would go out and look at the fruit.

Plaintiff said to Walkden that if they did not want the fruit he would pay them back their deposit. Within about three days after the date of the frost Mr. Walkden went through the orchard with the plaintiff and made some examination, but reached no conclusion. He came again on November 26th and made a more careful examination. Thereupon, according to plaintiff's testimony, Walkden stated to plaintiff that the upper ten acres was not damaged at all, that the second five acres was very slightly damaged, and that the lower five acres was considerably damaged. Walkden stated that he would telegraph to the defendants, who were at Pittsburg, Pennsylvania, and would then report to the plaintiff.

By the government test of 8 to 1, as mentioned in the contract, it was intended that the juice of the oranges should contain soluble solids equal to or in excess of eight parts to every part of acid contained in the juice, the acidity of the juice to be calculated as citric acid without water of crystallization. On November 27th the plaintiff took sample oranges, in the manner described in his testimony, from the lower five acres and separately took samples from the middle five acres, and took them to the Hillside packing-house to be tested. This was the packing-house at which the oranges were to be delivered. It was admitted at the trial that those tests were made and that they resulted as follows: "One tested 8.1 to 1, and the other test shows 9 to 1." On November 28th the plaintiff had certain tests made of the oranges from the upper ten acres, with results of 7 to 1 and of 7 and a fraction, but with no results coming up to the standard of 8 to 1. It should further be stated that in going through the grove Mr. Walkden cut a great many oranges for the purpose of ascertaining their condition with respect to the effect of frost. On the evening of November 28th, according to plaintiff's testimony, Mr. Walkden called plaintiff on the telephone and stated that he had got a message that they had accepted the fruit, and he wanted plaintiff to go to picking the next morning; that they did not want to pick the damaged fruit until the last, but wanted him to pick the upper fruit first. Plaintiff stated to him: "That fruit won't test up. What are you going to do about that?" Walkden replied: "Well, go to picking down below there, then."

Between November 29th and December 4th plaintiff picked and delivered at the packing-house the quantity of oranges

referred to in the first cause of action stated in his complaint. On the evening of December 3d Walkden called plaintiff on the telephone and stated that the manager of the packing-house would not pack or ship that fruit for him because it was badly frozen. On December 4th plaintiff and ·Walkden met at the packing-house. Walkden stated that he could not ship that fruit. Plaintiff inquired if he meant to pay him for it. Walkden stated he would not answer that question. Walkden did not at that time say anything about the fruit not testing 8 to 1. On December 6th the defendants at Pittsburg telegraphed to the plaintiff at Lindsay, California, as follows: "We hereby demand immediate return of five hundred dollars advanced you account your failure deliver oranges as required." That telegram was the only reply which plaintiff received to his question put to Walkden as above stated.

George Sparks, a witness for defendant, and who had been many years in the orange ·business, testified that he saw the fruit that was delivered by plaintiff at the packing-house; that it was somewhat frozen and was not up to the 8 to 1 test. He further stated that fruit changes in regard to that test after being picked and brought to the warehouse; that is, it improves and the solid content increases; that all fruit is improved in its test from the time it is brought in until several days after. Mr. Walkden testified that he declined to receive the fruit on account of the test and damaged stock; that he understood that it did not test up to the 8 to 1 test; that when he told plaintiff to pick his fruit he asked him to pick off all sun-burned and outside fruit and damaged fruit and throw it on the ground and not deliver it. On this last point plaintiff testified as follows: "Q. Don't you remember, when he was there in the orchard on one occasion, before you commenced picking, that you and he were talking about the frozen fruit, and that he told you that when you picked the fruit you should not take the outside fruit or the sun-burned fruit, but should pick the inside fruit only? That is, the fruit on the inside of the tree, which was not likely to be so badly frozen? A. No, sir. I will tell you, he did talk some about me culling out; that is, not taking the fruit that is outside, the most exposed fruit, we did talk about that; but I didn't agree not to take that, I wouldn't agree to not putting that fruit in.

But I did take the fruit off and throw it on the ground. I hired two men. I put two men in there and had them pick off the outside fruit and throw it on the ground, and instructed the picker boss to tell them not to pick that fruit. I done that voluntarily, though, not that I had any understanding with him that I should not do it. Q. Didn't you have an understanding with him, and didn't he tell you that he wanted the frozen fruit culled out? A. No, sir; he never told me he wanted it; because the understanding was that they should take all the fruit there was. That was the understanding right there in the orchard; and if they didn't want it all I would pay them their money back. He said he didn't want their money back; they wanted the fruit. Q. Well, this fruit that you delivered there at the Hillside packing-house was badly frozen, wasn't it? A. Yes, sir; it was damaged fruit. It was understood; and we both understood and agreed and admitted that it was damaged fruit, Mr. Walkden and I both.''

There is other testimony stating that tests of the delivered fruit were made on or about December 11th, which came up to the standard of 8 to 1; and that, in the opinion of the witnesses, it was merchantable fruit.

On the 8th of December, 1916, there came a second freeze, which damaged the remainder of the fruit on the lower ten acres of plaintiff's grove so that its value was entirely lost. According to plaintiff's testimony, he could have delivered all of that fruit before the second freeze came on December 8th if his deliveries had not been interrupted by the circumstances above stated. He further testified that between the sixth day of December, when he received the telegraphic demand from the defendant company and the eighth day of December, when the second freeze came, he could not have disposed of the remainder of the fruit that was on the lower ten acres. The amount of this undelivered fruit, being the fruit involved in the second cause of action, is well established by the evidence. If the plaintiff is entitled to recover anything at all, it cannot seriously be contended that the amount of the judgment is excessive.

[1] Notwithstanding some conflict in the evidence concerning some facts, it is plain from the testimony which we have outlined that there is in the record sufficient evidence to justify the finding that the fruit in question was mer-

chantable, free from splits, and it conformed to the 8 to 1 test. **[2]** Admitting that there was some damage by frost, the extent of that damage was not such that at the time of picking and delivery of the delivered fruit, and at the time when the remainder would have been delivered if the deliveries had not been interrupted by defendants, the oranges were not of merchantable quality. This fact was determined by the defendants themselves, by their authorized representative. Being satisfied on that point by his own investigations, his instructions to pick and deliver constituted an acceptance, subject to no condition except that the oranges should comply with the 8 to 1 test. And since, as upon sufficient evidence the court found, all of the fruit for which compensation is sought in this action did at that time conform to the required test, there remained no fact on which refusal to accept and pay for it can be justified. **[3]** The question whether or not title to the fruit on the middle five acres had passed to the purchaser is immaterial, because the destruction of that fruit on the trees, by the second frost, was caused by the defendants and was a loss due to their own acts by which the picking and delivery was delayed.

The judgment is affirmed.

Shaw, J., and James, J., concurred.