LIONDALE MERCANTILE CO., INC., Respondent, *v.* HENRY B. GERBER, Appellant.

First Department, May 27, 1921.

Sales — action to recover on acceptance of time draft given for purchase of goods to be delivered — evidence examined — question for jury as to breach of contract and waiver — contract construed not to require buyer to call for goods at seller's place of business — seller could not dispose of part of goods before draft due and recover as for full performance — exception to refusal to dismiss complaint at close of plaintiff's case not available on appeal where motion not renewed at close of evidence.

In an action to recover upon the acceptance by the defendant of a time draft which recited that the obligation of the acceptor arose out of the purchase of goods from the plaintiff, in which it appeared that the contract for the purchase of the goods provided for "Delivery at New York: When called for," and that the price was "f. o. b. New York," evidence examined, and *held*, that a question of fact was presented as to whether the defendant refused to take the goods and if so whether that refusal was

not waived and whether when he demanded the delivery of a part of the goods he consented that delivery might be deferred until it would be convenient for the plaintiff to make it, and whether the plaintiff's failure to make the delivery was not owing to the defendant's refusal to comply with plaintiff's unwarranted demand for cash payment to apply on the contract.

It was error to direct a verdict for the plaintiff on the theory that there was no obligation on the part of the plaintiff to deliver any of the goods until the defendant called at its place of business, and was prepared to receive delivery thereof, for the reasonable construction of the contract is that the defendant had the option to designate the place of delivery within the city, whether to himself at his place of business or to a carrier for transportation elsewhere, or otherwise, and the words " When called for " were intended to obligate the seller to hold the goods till the defendant desired delivery thereof and gave it notice of the place, and the defendant was not obliged to call for the goods at the plaintiff's place of business.

The action being between the parties to the acceptance and the acceptance having been expressly predicated on the contract, the case is the same in principle as an action by a seller for the purchase price of goods, and *it seems* that the plaintiff did not have the right to dispose of part of the goods sold to the defendant before the draft became due and recover on the contract as for full performance of its obligations thereunder.

However, while the defendant moved for a dismissal of the complaint at the close of the plaintiff's case and excepted to a denial of his motion, he did not renew the motion at the close of the evidence and, therefore, the exception is no longer available and cannot be made the basis of a decision by the Appellate Division.

Appeal by the defendant, Henry B. Gerber, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 8th day of January, 1921, on the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 12th day of January, 1921, denying the defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Morris Grossman,* attorney, [*Leopold Klinger* of counsel], for the appellant.

*Henry Swartz,* for the respondent.

Laughlin, J.:

The recovery was upon the acceptance by the defendant at the city of New York of a time draft, referred to as a trade

acceptance, drawn at the same place by the plaintiff on the 9th of April, 1920. By the acceptance the defendant promised to pay to the order of the plaintiff on the 11th day of July, 1920, $4,460.95. It was recited in the draft that the obligation of the acceptor arose out of the purchase of goods from the drawer. The answer put in issue the material allegations of the complaint and for a first defense alleged that the acceptance was given in advance as part performance of a proposed contract by which plaintiff agreed to sell to the defendant and he agreed to buy of it ten cases of voile to be delivered when called for, and that on the 21st of June, 1920, he called for and demanded delivery of one case of the goods and delivery thereof was refused, and that plaintiff failed to tender delivery of the goods and defendant elected to rescind the contract and notified the plaintiff of such election, and that, therefore, the acceptance was without consideration and void. The second defense repeats, by reference, the allegations of the first and further alleges that by the terms of the contract the defendant's liability, if any, was limited to $1,000. The answer also contains a counterclaim in which the allegations of the first defense are repeated, by reference, and it is alleged that the defendant deposited with the plaintiff $1,000 as security for the performance of the agreement by him and to be forfeited in the event that he failed to accept the goods, and that he was at all times ready, willing and able to accept and pay for the goods and would have done so if the plaintiff had tendered performance, and that the return of the amount so deposited as security has been demanded and refused, and judgment is demanded therefor and for the dismissal of the complaint. The reply to the counterclaim admits that the acceptance was to be payment in part for the ten cases of goods and that the defendant requested the delivery of one case on the twenty-second of June, and puts in issue the other allegations of the counterclaim; and for a defense to the counterclaim it is alleged in the reply that the original contract was modified by providing that the defendant should deliver in advance a trade acceptance covering all the goods, and that this was done, and that thereafter the defendant repudiated the agreement and refused to pay according to his acceptance and subsequently requested the plaintiff to deliver part of the

goods, which the plaintiff agreed to do as soon as it conveniently could, and that it tendered delivery thereof on the ninth of July, but that acceptance of delivery was refused, and that the plaintiff has been ready and willing at all times to perform the agreement as modified and offered so to do, but the defendant repudiated it.

The agreement for the sale of the goods was made in writing on the 24th day of March, 1920. It recites that the defendant placed the order for the goods with the plaintiff, and with respect to delivery it provides as follows: " Delivery at New York: When called for." Below this line of the contract were three headings, " Pieces," " Description," " Price per yard," and below the latter and between it and the price per yard was the following: " f. o. b. New York." It was shown that the contract was on " a form," but it does not appear whether it was a printed or typewritten or written form, or what part was filled in to make this contract. It provides that the plaintiff was to receive at once the defendant's check for $1,000 " as security on this transaction which amount is to be forfeited " by the defendant if he failed to accept the goods. It also provided that the goods were to be billed to the defendant and that payment of the bill was to be guaranteed by a bank. It further provides that if the delivery of any of the goods was deferred at the request of the buyer, delivery thereof might be made at the seller's option after the expiration of the specified time, and that shipments within two weeks after the specified date for delivery should constitute good delivery, and that " All goods are sold at New York, at mill, at finishing works, according to point of origin," and that " delivery of the merchandise to a transportation carrier constitutes a delivery," and that if the transportation company for any reason refuses to accept the merchandise, the seller has the privilege of at once charging the goods to the buyer and holding them subject to his order, and the buyer was requested carefully to examine and test all goods before using them as no allowance would be made after the goods were cut. On the sixth of April the plaintiff wrote the defendant stating that at his request it inclosed a bill covering merchandise that it was holding for him and that it would be pleased to hear from him with trade acceptance properly

signed.  There is in the record an invoice dated " March 29, as May 1, 1920," which was inclosed with the letter.  It specifies by number ten cases and the yardage in each.  On the ninth of April the plaintiff wrote the defendant waiving, as had been agreed verbally, the provision that the bill was to be guaranteed by a bank and agreeing instead to hold his check for $1,000 given as security which he was to forfeit in the event that he did not take the goods, and agreeing " to release $3,000 worth of merchandise at one time against trade acceptance " which, it is recited, the defendant was giving the plaintiff " for this entire transaction," and agreeing to hold the balance of the shipment until the payment of the first $3,000, and then to make a further shipment of $3,000 and to repeat that " until the entire transaction has been disposed of."  It will be noted that the acceptance bears the same date as this letter.  On the twenty-first of June the defendant wrote the plaintiff to ship to the Elk Textile Co., Inc., at a specified address for his account one case of the goods he had on order with it and to charge and mail the bill to him.  On the twenty-eighth of June he wrote the plaintiff again drawing its attention to his former letter and to the fact that he had received no reply thereto and that the goods had not been shipped and requesting delivery at once, and to charge and mail the invoice to him.  On the thirtieth of June the plaintiff wrote to the defendant referring to his letter of June twenty-eighth and stating that it had explained the situation quite fully to him over the telephone and that it was " laboring under great difficulties in making delivery of the merchandise at present," but that it probably would be in a position to do something for him in a few days.  On the eighth of July, which was three days before the draft became due, the defendant wrote the plaintiff that owing to its failure to deliver the case of goods his customer had canceled the order and that, therefore, he was compelled to cancel his order with the plaintiff, and he thereby gave it notice of such cancellation, and requested the return of the deposit.  The plaintiff next day notified defendant that his customer had refused a tender of delivery of the case of goods, and on the thirteenth of July it wrote him refusing to accept the cancellation of the order and stating that it had explained to him its

difficulty in making deliveries and that it would deliver at the first opportune time and that this agreement was agreeable to him and that it had made the shipment to his customer and had tendered the delivery of the goods on July ninth, and delivery was refused, as it had notified him, and that under the circumstances it could not accept his cancellation and would expect him to " take care of this transaction."

The plaintiff showed that it indorsed the acceptance in blank and caused it to be presented for payment on July eleventh and to be protested for non-payment. The plaintiff's vice-president and manager testified that he thereafter asked the defendant why he did not pay the acceptance, and the defendant replied, in substance, that he had told him before he would not pay it and that he did not take the goods and that he would not take them; that at the time the contract was made the plaintiff had the goods in storage, and that it took the goods from the storehouse early in July and some of them were taken out before that date; that the invoice, to which reference has been made, represented the identical goods which were sold to the defendant and which were to be delivered to him; that after receiving the defendant's request for the delivery of one case of the goods on June twenty-first, he endeavored to communicate with the defendant by telephone and called at his office, but it was closed, and that he then wrote the defendant to come and see him, and that after receiving the defendant's second letter requesting delivery of the one case of goods the plaintiff on the ninth of July sent the case of goods by hand truck to the defendant's customer who refused to receive it; but he said that this was at the request of the defendant, made early in July, who said that he could not get a truckman and that he at that time offered to give the defendant a delivery order on the storage house for the case of goods; that when these requests for the delivery of the one case of goods were made, the plaintiff had the ten cases on hand, either in its place of business or in storage. An invoice of six cases of this quality of goods, including one of the cases sold to the defendant, purporting to be a sale of the goods by the plaintiff to another firm on the 29th of April, 1920, was received in evidence, and it was shown by uncontroverted evidence that the goods were delivered according to that

invoice the latter part of March or early in April. The plaintiff objected to that evidence showing a sale and delivery to another of one of the cases of goods sold to defendant on the ground that there was no defense predicated on a sale of part of the goods by the plaintiff to another pleaded; but on the defendant's contention that it was admissible under its defense that the plaintiff breached the contract and failed to deliver or tender delivery of the goods thereunder the court overruled the objection. It was also shown that the plaintiff retained the other goods sold to defendant and covered by the invoice until about three months before the trial when the plaintiff was in liquidation and the goods evidently were sold although definite proof of such sale was excluded on plaintiff's objection. The plaintiff claimed that this evidence was inadmissible since the defendant did not counterclaim for damages, but the defendant claimed it showed that the plaintiff accepted the defendant's attempted cancellation, and that otherwise it would have been the duty of the plaintiff to hold the goods or to tender delivery thereof to the defendant and to rely upon the three trade acceptances, the other two being like the one sued upon, covering the purchase price of all the goods, and that where, as here, the plaintiff sues upon a trade acceptance representing the purchase price of part of the goods, it was its duty to remain able to deliver the merchandise. The defendant also claimed that the plaintiff having sold part of the goods before the draft fell due was unable to perform the contract, and, therefore, could not recover on the acceptance.

The vice-president and manager of the plaintiff testified that early in June the defendant told him that he could not take and pay for the goods, and that as a result of negotiations the plaintiff offered to allow a deduction from the purchase price of two and one-half cents, which represented its profits, and that defendant endeavored but was unable to obtain the money to pay therefor, and then stated that he would not take the goods, and that after that the plaintiff received the defendant's order to deliver the one case of goods, and that although plaintiff wrote defendant on June twenty-sixth and twenty-eighth asking him to call with respect thereto, he failed so to do, and then they had a conversation over the

First Department, May, 1921. [Vol. 197

telephone, as already stated, and in that conversation there was no reference to the prior interview or negotiations between them, and that defendant requested the delivery of the goods then or as soon as plaintiff could deliver them, and that at the time the plaintiff tendered delivery of the one case it considered the original contract in force. The witness further testified that ·at the time the contract was made the plaintiff had twenty or twenty-five cases of the same kind of goods and that one of the cases invoiced to the defendant was sold to another through error, but that the plaintiff then retained on hand and in storage some twenty cases of the same kind of goods and that the reason he did not deliver the case of goods before July ninth was " I didn't have to deliver it."

The defendant testified that during the negotiations and at the time the contract was signed there was a conversation between him and the plaintiff's representative Halperin with regard to " delivery when called for," and that he said that March was no time for the delivery of voiles and that he wanted the goods sometime between May and July, and that Halperin replied, " All right, you can have them dated as May 1st, and have them delivered to you any time," and that he asked if Halperin would have that put on the order, to which Halperin replied, " Yes, you can have them delivered to you any time between May 1st and July, any time you call for them." This testimony was stricken out on plaintiff's motion as varying the terms of the contract and the defendant excepted. The defendant testified that he called for the goods by requesting by letter as shown the delivery of part of them. He denied that he had the conversation with Halperin early in June, as the latter testified, or that he asked to be relieved of the contract, and further testified that after receiving the plaintiff's request of June twenty-sixth to call, he telephoned and talked with Halperin and asked what was desired, and Halperin answered that he wished to see him about the goods that he had ordered, and he being unable to leave the office Halperin came over to see him, and he informed Halperin that he had sold all the goods to this customer and that the customer wanted one case then for samples, and that Halperin refused to deliver the goods without the payment of more money; that he then drew Halperin's attention to the contract by

which he was to receive credit to the extent of $3,000 on the acceptances, which arrangement was based on a financial statement he had rendered to the plaintiff showing that he had in cash and merchandise $28,000, and also his attention to the fact that his deposit of $1,000 would more than cover the one case of goods, and insisted on the delivery of the goods without a cash payment, but Halperin said he would not ship the goods and that he showed Halperin the contract with his customer by which he was to receive a profit of one and one-half per cent over the purchase price. The defendant also showed that before he canceled the contract the plaintiff had opened several of the cases of goods sold to him and removed goods therefrom, and that the cases of his goods which plaintiff had at the time he canceled the contract which had been opened did not contain the yardage called for by the invoices and that on the seventh of July his customer canceled the order for the purchase from him of these goods on account of the non-delivery of the case he had directed the plaintiff to deliver.

It thus appears that on the conflicting testimony a question of fact was presented as to whether the defendant early in June refused to take the goods and if so whether that refusal was not waived and whether when he demanded the delivery of one case of goods the latter part of June he consented that the delivery might be deferred until it would be convenient for the plaintiff to make it, and whether the plaintiff's failure to make the delivery was not owing to defendant's refusal to comply with its unwarranted demand for a cash payment to apply on the contract.

At the close of the evidence the court directed a verdict for the plaintiff for the amount of the acceptance less the $1,000 deposited by the defendant as security, and dismissed the counterclaim. The defendant excepted and asked leave to go to the jury on all the questions of fact and particularly as to the meaning of the words, " When called for," with respect to the delivery of the goods, and as to what was intended as to the forfeiture of the deposit. The request was denied and the defendant excepted, and his motion for a new trial was also denied.

The verdict was directed on the theory that there was no obligation on the part of the plaintiff to deliver any of the goods until the defendant called at its place of business and was there prepared to receive delivery thereof. I am of opinion that the court erred in so ruling. The place of business of both parties was in the city of New York. If it had been intended that delivery was to be made at plaintiff's place of business or at the warehouse in which the goods were stored, I think that would have been shown more definitely· by the contract. The terms used in the contract are those commonly employed where the seller is to deliver the goods when ordered by the purchaser. The delivery was necessarily to be made by the seller; the contract provides that it was to be made at New York "When called for," and also that the goods were to be delivered "f. o. b. New York." The latter provision would be wholly unnecessary and inappropriate unless it was intended that the seller was to do carting at its own expense incident to the delivery of the goods, for it expressly provided that delivery was to be made at New York where the places of business of both parties were and, therefore, the abbreviations "f. o. b." could not have been here used, as it sometimes is, where the buyer and the seller are at different points, to fix the purchase price by indicating that the purchaser is to pay the freight. (*Miller & Sons Co.* v. *Sergeant Co.*, 191 App. Div. 814, 818; *Maddaloni Olive Oil Co., Inc.,* v. *Aquino,* Id. 51, 55.) The reasonable construction of these provisions with respect to the place of delivery is, I think, that the buyer had the option to designate the place of delivery within the city, whether to himself at his place of business or to a carrier for transportation elsewhere or otherwise, and the words "When called for" were intended to obligate the seller to hold the goods until the defendant desired delivery thereof and gave it notice of the place he desired delivery to be made. Doubtless if defendant did not call for the goods within a reasonable time the plaintiff could have tendered delivery and could have sued for and recovered the purchase price provided it held the goods subject to the order of the defendant.

The construction that defendant was not required to call for and take the goods is further borne out by the provisions

of the contract referring to delivery to a transportation carrier and prescribing the rights of the seller in the event that such carrier should for any reason refuse to accept the goods. If this construction may not be given as a matter of law, it surely may not be held as a matter of law, as the trial court ruled, that there was no obligation on the part of the seller with respect to delivery until the defendant came prepared to take and receive the goods, and the parol evidence received and stricken out was admissible to aid in the construction of these provisions.

There is, I think, another serious obstacle to the plaintiff's right to recover. The action being between the parties to the acceptance and the acceptance having been expressly predicated on the contract, the case does not differ in principle from an action by the seller for the purchase price of the goods; and viewed in that light I am unable to see any theory on which the plaintiff could dispose of part of the goods sold to the defendant before the draft became due and recover on the contract as for full performance of its obligations thereunder. The defendant, however, failed to move for a dismissal at the close of the evidence, and although he moved for a dismissal at the close of the plaintiff's case and excepted to the denial of his motion, having failed to renew it at the close of the evidence, the exception is no longer available and may not be made the basis of decision by an appellate court. (*Hopkins* v. *Clark*, 158 N. Y. 299; *Clements* v. *Beale*, 53 App. Div. 416.) This point, therefore, is not presented for decision.

It follows that the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.