[Civ. No. 7495. Third Dist. Oct. 21, 1948.]

JACK FISCHER, Appellant, v. D. C. MEANS, Respondent.

Rich, Weis, Carlin & Fuidge for Appellant.

John Kenward for Respondent.

THOMPSON, J.—The plaintiff and cross-defendant has appealed from a judgment of $2,090 which was rendered against him upon the cross-complaint, as damages for failure to accept delivery of a crop of banana squash purchased pursuant to a written contract. The squash were raised by the defendant and sold on contract to the plaintiff at a

stipulated sum per ton. They were harvested and stored in defendant's barn as per agreement and plaintiff was immediately notified that the crop was ready for delivery, but failed and refused to take or accept delivery. The squash deteriorated and rotted until they became substantially worthless.

Plaintiff brought suit against the defendant June 3, 1947, for $200 alleged to have been loaned, but which the court found was paid on the purchase price of the squash. Defendant answered, denying the material allegations of the complaint, and filed a cross-complaint for damages for failure to accept delivery of the crop as previously stated. The court adopted findings favorable to the defendant in every respect. Judgment was rendered accordingly. From that judgment this appeal was taken.

The defendant's cross-complaint alleges that, in 1946, he raised 150 tons of banana squash on his fifteen acre ranch in Sutter County, which he agreed, on April 22, 1946, to sell to the plaintiff for $20 per ton, upon which purchase price the plaintiff then paid the sum of $200 to bind the bargain; that on or about the 15th day of November, 1946, the cross-complainant notified plaintiff that he was ready to deliver to plaintiff, pursuant to the terms of their contract, said 150 tons of "#1 pink banana squash, of the contract value of $3000," but that the plaintiff wrongfully refused to accept said squash, or any part thereof, to cross-complainant's damage in the sum of $2,758. The written contract was alleged in the following language:

"April 22, 1946

Received from Jack Fischer, the sum of $200.00 for items listed as follows.

I the undersigned agree to plant and raise in Sutter County 15 acres of banana squash and *sole* #1 crop squash to be sold to Jack Fischer *only* at $20.00 per ton. I am to store squash in my building until ready for delivery & called for on or before Jan. 31—1947.

Signed: D. C. Means

899

Signed: Jack Fischer."

The material allegations of the cross-complaint were denied. Upon trial the court adopted findings favorable to the defendant and cross-complainant, determining that plaintiff signed and retained a duplicate copy of the contract, on the date and

in the form alleged, and at the same time paid to the cross-complainant the sum of $200 "in earnest to bind the agreement;" that the cross-complainant duly performed the contract on his part, and on November 15, 1946, notified plaintiff he was then ready to deliver, pursuant to the contract, "116 tons and 1200 pounds of #1 pink banana squash, of the contract value of $2,332," which plaintiff wrongfully refused to accept; that plaintiff was entitled to credit on said purchase price the sum of $200, and the further sum of $42, being the value of squash salvaged by the cross-complainant, and that the cross-complainant was thereby damaged in the sum of $2,090. The court further found that all allegations of the complaint and answer to the cross-complaint, inconsistent with the foregoing determined facts, are untrue. Judgment was accordingly rendered against plaintiff for the last-mentioned sum.

The appellant contends that the findings and judgment are not supported by the evidence, and that the court erroneously construed the written contract to mean that plaintiff agreed to accept and pay for the squash at $20 per ton when the crop was harvested and "ready for delivery." On the contrary, appellant asserts that, according to the said agreement, he was not required to accept delivery of the crop until January 31, 1947, and that the grower was required to store the squash and keep it in good condition for delivery until that time.

We are of the opinion the findings and judgment are adequately supported by the evidence. There is a conflict of evidence as to whether plaintiff entered into or signed the alleged written contract. The plaintiff positively testified that he did not agree to purchase the crop of squash; that he merely loaned the cross-complainant said sum of $200 with which to pay the cost of producing the crop, and that, when he first saw the squash which were stored in a barn, on or about the 31st day of January, 1947, they were substantially all rotten, deteriorated and worthless.

There is sufficient evidence to show that the plaintiff and the cross-complainant were neighbors living about one mile apart; that plaintiff had been engaged in the business of a fruit and produce merchant for about twenty years, and that the cross-complainant had never before raised squash and knew very little about that particular product; that prior to April, 1946, the cross-complainant talked with plaintiff about his desire to raise squash on his fifteen acres of leased

land, and that plaintiff encouraged him to do so; that the parties met at the home of plaintiff on April 22, 1946, in the presence of plaintiff's wife, and that plaintiff then agreed to purchase the entire crop of squash to be produced on said land for that season, at the price of $20 per ton, and then paid the cross-complainant said sum of $200 to bind the bargain and as part payment therefor; that plaintiff's wife then wrote duplicate copies of the contract in the exact language alleged in the cross-complaint, one of which copies was signed by plaintiff and handed to Mr. Means, and the other was signed by the cross-complainant and retained by plaintiff; that Mr. Means thereafter planted, cultivated and produced about 117 tons of No. 1 pink banana squash which he stored in good condition in his barn on his premises on November 12th to the 15th; that he immediately notified plaintiff the crop was then ready to deliver, but that the plaintiff failed and refused to call for or accept delivery of the squash. There is no evidence that the barn was not perfectly dry and suitable for storing the crop. Several neighbors saw the crop after it was stored and testified that the fruit was in good condition. Several days later Mr. Means again notified plaintiff that the crop was ready for delivery, but plaintiff again failed to call for or accept delivery thereof. About January 1, 1947, Means observed some evidence of deterioration of some of the stored squash, and he notified plaintiff of that fact. He testified that he had told plaintiff he had been offered $17 per ton for it, and asked plaintiff to release him from his contract of sale, which plaintiff refused to do. Without that release Mr. Means was unable to sell the crop to anyone else for the reason that the contract provides that it would be sold ''to Jack Fischer *only*.'' Plaintiff went to the barn in company with a workman on his premises, and found some spots on, and evidence of deterioration of, some of the fruit. He then condemned the entire crop and refused to accept delivery of any portion thereof. There is some evidence that Means salvaged about two tons of the squash, but the balance of the crop was a total loss, due to plaintiff's refusal to accept delivery thereof.

It is evident we are bound by the findings to the effect that plaintiff contracted in writing to buy the entire crop of No. 1 pink banana squash from Mr. Means at $20 per ton, and that if, after due notice that they were ready for delivery pursuant to the contract, the plaintiff neglected and refused

to accept delivery thereof, or repudiated the agreement, and without fault of the seller permitted the squash to deteriorate and become unmarketable, plaintiff would be liable for the entire contract price thereof. (Civ. Code, § 1771; *Bishop* v. *Descalzi*, 46 Cal.App. 228, 234 [189 P. 122]; *California Pear Growers Assn.* v. *Herspring*, 60 Cal.App. 503, 507 [213 P. 518]; note, 44 A.L.R. p. 267; note, 108 A.L.R. p. 1496.) Section 1771 of the Civil Code provides that:

''When the seller is ready and willing to deliver the goods, and requests the buyer to take delivery, and the buyer does not within a reasonable time after such request take delivery of the goods, *he is liable to the seller for any loss occasioned by his neglect or refusal to take delivery. . . .* If the neglect or refusal of the buyer to take delivery amounts to a repudiation or breach of the entire contract, the seller shall have the rights against the goods *and on the contract* hereinafter provided in favor of the seller when the buyer is in default.'' (Italics added.)

In the headnote found in 44 American Law Reports at page 267, which is supported by numerous authorities, it is said in regard to the liability of a purchaser of personal property, who, by his negligence or refusal to accept delivery, permits it to become worthless, that:

''. . . Where, without fault of the seller, or opportunity for him to make other disposition, the property is destroyed or becomes worthless after the buyer refuses to receive it, the only allowance which will fully indemnify the seller may be the full contract price.''

The foregoing authorities appear to fit the facts in this case. The measure of damage was the full contract price of the crop, less the $200 advanced thereon, and the further sum of $42 realized by Mr. Means from the small quantity of squash which he was able to dispose of.

We assume the plaintiff was to accept delivery of the squash, pursuant to the contract, at the building where it was stored. It has been held that if the contract does not specify the place of delivery, it would be deemed to be either at the residence of the seller or at the building where the parties stipulated that the goods should be stored. (Civ. Code, § 1763; *Robbins* v. *Pacific Eastern Corp.*, 8 Cal.2d 241, 270 [65 P.2d 42]; 22 Cal.Jur. § 22, p. 931; 46 Am.Jur. § 170, p. 346.) Section 1763 of the Civil Code provides in that regard:

"Whether it is for the buyer to take possession of the goods or for the seller to send them to the buyer is a question depending in each case on the contract, express or implied, between the parties. Apart from any such contract, express or implied, or usage of trade to the contrary, the place of delivery is the seller's place of business if he have one, and if not his residence; but in case of the contract to sell or a sale of specific goods, which to the knowledge of the parties when the contract or the sale was made were in some other place, then that place is the place of delivery."

In this case it was agreed the squash should be stored in the building on Means' premises, and we therefore assume that was the place agreed upon for delivery.

Finally, the appellant contends that the court erred in construing the contract to mean that the crop of squash was to be delivered when "ready for delivery;" that plaintiff was not required to accept delivery until January 31, 1947, and that the deterioration of the fruit prior to that time was due to the negligence of the grower, which relieves plaintiff of liability. We cannot agree with that construction of the contract. The agreement in this case was written by the wife of plaintiff in his presence. We must assume it was prepared under his direction. It is a settled principle of construction of a contract that if the language is ambiguous it must be construed most strongly against the person who prepared the document and caused the uncertainty to exist. (Civ. Code, § 1654; *Pacific Lumber Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 410, 422 [139 P.2d 892]; *Laidlaw* v. *Marye,* 133 Cal. 170, 179 [65 P.2d 391]; 6 Cal.Jur. § 185, p. 307.)

We are of the opinion the title to the property passed to plaintiff in this case when he was notified that the fruit was ready for delivery at the building where the parties stipulated it should be stored. But it may be immaterial whether the title then passed or not. Section 1725 (3) of the Civil Code provides that:

"Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods and as soon as the seller acquires the goods the property therein shall pass to the buyer without further act if the parties so intend unless the agreement otherwise provides."

It is true that, on appeal, this court is not bound by the construction of the language of the contract which was placed upon it by the trial judge. In the case of *La Lumia* v.

144

*Northern California Packing Co.,* 75 Cal.App.2d 917, at page
922 [172 P.2d 94], it is said in that regard:

"The construction of the language of a contract, in the absence of other evidence, is purely a question of law. Under
such circumstances a reviewing court is not bound by the
construction thereof by the trial court, but must 'make the
final determination in accordance with the applicable principles of law.' (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d
825]; 6 Cal.Jur. § 192, p. 326.) . . . ."

 It should be recalled that the crop of squash which is
involved in this case was not in existence when the contract
for sale was executed on April 22, 1946. It was a contract
to sell to plaintiff, and to no one else, the entire crop when it
was produced and stored in the building. The language of
that contract which is in controversy is as follows: "I am to
store squash in my building until ready for delivery & called
for on or before Jan. 31—1947." The appellant contends that language should be construed to mean that
the fruit was to be stored by the seller in his building, and
kept in sound merchantable condition "until . . . called for,"
and that plaintiff was not required to call for it until January
31, 1947. That was a period of two and a half months after
it was stored and ready for delivery. Plaintiff was engaged
in a fruit and produce business and should be charged with
knowledge that the fruit was likely to deteriorate and to
become worthless in that period of time. The contract should
be read and construed as a whole. It is reasonable to assume
the parties knew and took into consideration the fact that the
exact time when a crop of squash would mature and be
ready for delivery would necessarily be uncertain, and that
while the seller agreed to store it until it was ready for delivery, "on or *before* Jan. 31—1947," in no event would he be
required to store it beyond that specified date. It must be
observed that the contract provides that it will be "called
for on or *before*" that date. It is reasonable to assume from
the language employed that the parties agreed that the seller
would store the fruit and that the purchaser would call for it
when he was notified that it was "ready for delivery." That
is the construction placed upon the language by the trial
court. We think it was correctly construed. Any other construction would enable the plaintiff to unduly delay the acceptance of the squash until it deteriorated and became worthless.

This is particularly true since the cross-complainant could not sell the crop to any person other than plaintiff. There is evidence that Mr. Means informed plaintiff in November, 1946, that he had an offer of $17 per ton from another prospective purchaser but that plaintiff refused to release him from the contract.

The case of *Talbott & Co.* v. *Byler* (Mo.App.), 217 S.W. 852, upon which appellant relies in support of his construction of the contract is clearly distinguishable from the present case. In that case the contract required delivery of 500 bushels of white corn at Wheeling, Missouri, "on or before the 10th day of December, 1917." Unlike the present case, there was no provision for delivery of the corn when it was "ready for delivery." In the Talbott case the court merely said:

"Of course, if it was to be delivered by that time, the corresponding obligation was on plaintiff to take it within that period. The phrase 'on or before' a certain date in a contract, with reference to the time it is to be performed, limits the time of performance to the date last mentioned if the subject-matter of the contract and the circumstances are such that time may be deemed of the essence. (Citing authorities.)"

The distinction between that case and this is that in the present case the language of the contract further qualified the time of delivery by also stating that the seller of the squash would store it "until ready for delivery." The last quoted language evidently contemplates that the plaintiff would accept delivery when the fruit was ready for delivery at any time on or before January 31, 1947.

Likewise, the case of *Liondale Mercantile Co.* v. *Gerber*, 197 App.Div. 345 [188 N.Y.S. 825], upon which the appellant also relies, is distinguishable from this case. In that case the contract merely provided that the goods in question were to be delivered "when called for" by the purchaser. There was no provision of the contract, as there is in the present case, that the seller was to store the goods "until ready for delivery." No specified limitation of time within which delivery was to be made was mentioned in the Gerber case. The New York court therefore properly said, "The words 'when called for' were intended to obligate the seller to hold the goods until the defendant desired delivery thereof and gave it notice of the place he desired delivery to be made." The very circumstances of the present case would seem to preclude the applica-

tion of the definition given in the New York case of the term "when called for." That construction would enable the purchaser in this case to avoid liability under his contract by merely failing and refusing to accept delivery after notice and thus allowing the squash to deteriorate and become worthless.

We are satisfied the plaintiff in this case was bound, under the reasonable construction of his contract, to call for and accept all sound squash when he was notified that they were ready for delivery.

For the foregoing reasons, the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.