Argued February 8, affirmed March 29, 1961

# TWEEDLE BROTHERS, INC. *v.* BERLINER

360 P. 2d 557

*Carlton R. Reiter,* Portland, argued the cause for appellant. On the brief were Reiter, Day & Anderson, Portland.

*William K. Shepherd,* Portland, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY and GOODWIN, Justices.

PERRY, J.

The plaintiff brought this action against the defendant to recover damages alleged to have arisen out of breach of contract. Upon trial of the issues presented, the jury returned a verdict for the defendant. The plaintiff filed a motion for a new trial which was granted and the defendant has appealed.

The plaintiff is engaged in the business of wholesaling "special use" lumber. The defendant owned and operated the Marx Fabricating Company and desired to purchase from plaintiff clear Sitka spruce lumber, kiln-dried and cut to certain lengths for the purpose of manufacturing flare bodies. On March 27, 1956, a contract for the purchase and sale of the desired lumber was entered into as follows:

> "* * * * *
> "Deliveries to commence within 30 days at rate of 2 truckloads of 4000 pcs each per week.
> F.O.B. Truck—Portland, Oregon
> Net cash upon delivery
> CLEAR SITKA SPRUCE KILN DRIED to Maximum 7% Moisture Content S4S to 1-11/16 x 5-5/16"
> 36,000 pcs 20½" or equivalent in 41"
> Price: 20½"—$37.50 per C pcs
>     41" — 75.00 "
> Equalized to exact length.
> 2% of pieces based on 20½" may have minor defects.
> Pieces in excess of 2% not useable will be replaced free of charge upon delivery of all rejected pieces to mill's truck at your plant.
> * * *"

On or before May 24, 1956, 23,345 pieces of lumber had been delivered and paid for under the contract and there remained to be delivered and paid for 12,655 pieces.

Some time in May, defendant, having manufactured all of the flare bodies he could dispose of under his contract with a certain customer, telephoned plaintiff's president and requested that the balance of the order be canceled. While there is a conflict in the testimony as to some portions of this telephone conversation, both parties agree plaintiff said "he would talk to the mill." The plaintiff had contracted with the Uptegrove Lumber Company to manufacture and deliver the lumber required by the defendant.

The parties continued to discuss the disposition of the remaining lumber by sale to some third party until in February, 1957, when plaintiff served notice it would make delivery of the lumber to defendant. Defendant refused to accept delivery and among his reasons therefor was his claim that there had been a mutual cancellation of the agreement as to the remaining lumber not delivered and further that this lumber failed to meet the moisture content requirement of the contract.

The trial court in granting a new trial stated that error had been committed in the submission to the jury of defendant's defense of mutual cancellation of the unexecuted balance of the contract because there was no substantial evidence of such an agreement. The defendant relies upon the telephone conversation in May, 1956, as the time of the cancellation agreement, but it is to be noted there is no statement by the defendant that plaintiff agreed to a cancellation, and as late as November 30, 1956, defendant was seeking to sell this lumber to third persons and writing

"We are still committed to accept delivery on this spruce and we are very anxious to find disposal of it."

Since there is no direct evidence of a mutual cancellation, we have looked to the circumstantial evidence disclosed by plaintiff's conduct. Our examination of the records discloses nothing in plaintiff's conduct inconsistent with a continuation of the agreement. Under these circumstances, there being merely the passage of time, an agreement to cancel cannot be implied. *Marnon v. Vaughan Motor Co., Inc.,* 184 Or 103, 194 P2d 992; *Craswell v. Biggs,* 160 Or 547, 86 P2d 71; *Cameron v. Edgemont Investment Co.,* 149 Or 396, 41 P2d 249.

We fully agree with the trial court's conclusion.

The defendant contends that, even admitting the trial court erred in submitting the issue of mutual cancellation, no prejudicial error was committed because plaintiff's breach of the material warranty in the contract as to the moisture content of the lumber relieved defendant of performance as a matter of law, and his motion for a nonsuit should have been allowed.

There can be no question but that the parties understood that a maximum moisture content not in excess of 7% was necessary for defendant's purpose and was, therefore, a material warranty. There was evidence introduced to the effect that at the delivery date to have been made by plaintiff the moisture content was 7% or less; that postponement of the date of delivery of the manufactured lumber to defendant in Portland was requested by the defendant and thereupon plaintiff stored the lumber; that on the date of attempted delivery by plaintiff the moisture content exceeded the allowable maximum.

ORS 75.220 of the Uniform Sales Act, relative to

where the risk of loss shall fall as between seller and purchaser, provides:

> "Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer, the goods are at the buyer's risk whether delivery has been made or not, except that:
> "* * * * *
> "(b) Where delivery has been delayed through the fault of either buyer or seller, the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault."

The above quoted portion of ORS 75.220 is taken in context from section 20 of the English Sale of Goods Act, 1893, which provides as follows:

> " 'Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer, the goods are at the buyer's risk whether delivery has been made or not. Provided that where delivery has been delayed through the fault of either buyer or seller the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault. . .' " *Demby Hamilton & Co., Ltd. v. Barden,* 1 All England Law Reports, 435, 436 (1949).

In interpreting this proviso, the English court approved the statement made in Benjamin on Sale of Personal Property, 7th ed., p. 426, which states:

> " 'It should be observed that the second clause of s. 20 of the Act. . . is not identical with Blackburn, J.'s proposition. He speaks of *mora* delaying the transfer of the *property* whereas the Act refers to a delay in delivery, i.e., in the transfer of *possession,* and, though in many instances the same acts operate to transfer both, yet this is not always the

case. It would therefore seem that the law, as laid down by him, has been extended by the Act. Moreover, the risk to be borne by the party in fault is the risk of any loss which "might" not otherwise have occurred; and this provision seems to throw on the party in fault the onus of showing positively that the loss would have occurred independently of his fault. The case is of course stronger where the loss would not have happened had there been no delay.' " (Italics theirs) *Demby Hamilton & Co., Ltd. v. Barden,* supra, p. 437.

The English court then finds that a request for postponement of delivery constitutes a fault, and the question of fact then remaining to be determined by the jury is whether or not the loss that accrued was brought about by the delay in delivery, i.e., would the loss have occurred whether there was delay or not?

While this particular question is new in this jurisdiction, other jurisdictions have followed the English court's interpretation and we believe correctly so. *Fischer v. Means,* 88 Cal App2d 137, 198 P2d 389; *Baltimore & Ohio R.R. Co. v. Carter,* 133 Md 551, 105 A 760; *Central Lithographing & Engraving Co. v. Moore,* 75 Wis 170, 43 NW 1124; *Schenning v. Devere & Schloegel L. Co.,* 173 Wis 20, 180 NW 136; *Sadler Machinery Co. v. Ohio Nat., Inc.,* 202 F2d 887 (CCA 6th, Ohio).

The trial court did not err in granting a new trial. Its judgment is affirmed.