[Civ. No. 26656.   Second Dist., Div. One.   July 8, 1963.]

L. A. BLACKBURN, Plaintiff and Respondent, v. WIL-
LARD H. ALLEN, Defendant and Appellant.

Calabro, Calabro, Calabro & Calabro, Alfred A. Calabro and Charles Murstein for Defendant and Appellant.

Paul S. Crouch and Robert C. Walbey for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment in favor of plaintiff with reference to a claim for money under a written contract.

The cause went to trial upon the claim of Blackburn that he, as the owner of a patent for a long stroke oil pumping unit, had entered into a written license agreement with Allen wherein, among other things, Blackburn had granted to Allen the exclusive right to make and sell all devices embodying the invention set forth and claimed in the letters patent. Paragraph 16 of the contract provides as follows:

"Licensee agrees to advance $85.00 per week from the signing of this agreement to Licensor or to supplement wages earned elsewhere by Licensor to an $85.00 per week minimum income to Licensor. Said advances to be charged against royalty payments as provided for herein above."

Paragraph 11 of the agreement provides:

"The Licensor may terminate this agreement upon ninety (90) days notice in writing to the Licensee, if the Licensee fails within the ninety (90) days to correct the conditions of said notice and neglects or refuses to pay all and singular royalties when and as the same may become due and payable and/or the failure of the Licensee to keep and perform all and singular covenants named herein; but in such event, the Licensee shall not thereby be discharged from any liability to the Licensor for any royalties due at the time of the service of such notice. The Licensee may terminate this agreement only at the end of any calendar year during the life of this agreement by serving written notice upon the Licensor of intention so to do, not less than ninety (90) days prior to the expiration of any year, and the payment of all royalties and moneys due the Licensor at the time of such termination."

It was alleged and the court found upon substantial evidence that Allen paid to Blackburn $85 each week from the date of the contract until November 1, 1957, that from the latter date Allen refused to pay Blackburn the sum due and owing, i.e. $85 per week. The license agreement was dated February 16, 1950, and was prepared by Allen. There were some few changes made in the agreement at the time it was submitted to Blackburn for his signature (around midnight of February 16, 1950), among such being a specification that the unit which was the subject of the agreement was numbered S-125769.

There was also executed at the time a form of letter of understanding or agreement with reference to some other units and items which were not connected or associated with the written contract heretofore mentioned. A man by the name of Richardson had been involved with Blackburn with reference to such other units and apparently there had been a controversy between Richardson and Blackburn which controversy was referred to in such letter of understanding.

Evidence was introduced to the effect that Blackburn had not, from the date of the agreement to the date of trial, received any money as wages for any work and labor performed by him. It was established that he was in part an Osage Indian and as such received an allotment from certain Osage Indian reservation oil production, which sums were greater than $85 per week. As heretofore set forth Allen paid to Blackburn $85 per week from the date of the agreement up to November 1957 at which time he stopped making any further payments. A letter was written by Allen to Blackburn postmarked November 1, 1957, and received by Blackburn on November 2, 1957, wherein Allen stated his intention to terminate the license agreement. The testimony of Blackburn and the testimony of Allen (taken by Blackburn under Code Civ. Proc., § 2055) sufficiently supports the findings of the trial judge.

Appellant now asserts that the court failed to give any effect to the letter of understanding; there was error in interpreting paragraphs 16 and 11 of the license agreement; Blackburn was under a duty to look for gainful employment after he received the purported notice of termination; Blackburn was under a duty to disclose to him the amount of money he received from oil royalties and further that there was a failure to find on all material issues of fact.

The evidence produced by Blackburn is clear to the effect that the matters referred to in the letter of understanding had nothing to do with the subject matter of the written license agreement, namely the licensing of the particularly designated long stroke oil pumping unit. It was for the trial judge to determine who was telling the truth. He apparently believed Blackburn and disbelieved Allen. Furthermore, the writings themselves indicate on their face quite clearly that they deal with separate and different items or matters.

With reference to the interpretation of paragraph 16

it is to be remembered that Allen prepared the agreement and brought it to Blackburn's house for signature about midnight of February 16, 1950. Blackburn was to receive as a royalty 10 per cent of the gross selling price of the units to be manufactured by Allen. Allen was obligated to commence manufacturing the units within 90 days from the date of the license agreement. Allen in fact never manufactured any units and no royalty as such was ever paid. Of necessity there were no deductions from or charging of any advancements against royalty payments. If there was any ambiguity in the license agreement (and the trial court in effect found there was none), it must under the circumstances be construed most strongly against Allen. See *Fischer* v. *Means,* 88 Cal. App.2d 137, 143 [198 P.2d 389]; Civil Code, section 1654; *Pacific Lumber Co.* v. *Industrial Acc. Com.,* 22 Cal.2d 410, 422 [139 P.2d 892]; 6 Cal.Jur., Contracts, sec. 185.

■ There was evidence to the effect that Allen knew that Blackburn was in receipt of oil royalties both before and after the execution of the license agreement, and Allen continued to make the payments of $85 per week for a considerable period of time. The acts of the parties to the contract provide a reliable means of arriving at the intention of the parties, and the construction they put upon the provisions in question in the agreement before any difficulty arose between them will be given considerable consideration by the court. See *Crestview Cemetery Assn.* v. *Dieden,* 54 Cal.2d 744 [8 Cal.Rptr. 427, 356 P.2d 171]; *Standard Iron Works* v. *Globe Jewelry & Loan, Inc.,* 164 Cal.App.2d 108 [330 P.2d 271]; *Hopkins* v. *Hopkins,* 157 Cal.App.2d 313 [320 P.2d 918].

The oil royalty money was separate and apart from any money or wages referred to in the license agreement and under the circumstances there was no obligation upon Blackburn to disclose to Allen what he, Blackburn, received from the oil royalties.

■ The contention to the effect that there was a confidential and fiduciary relationship between the parties because they sometimes prayed together is without merit. Friendship, affection or even intimacy existing between two parties and the repose of confidence by one in the other does not necessarily create a confidential relationship as known in the law. (*Meyer* v. *Zuber,* 92 Cal.App. 767 [268 P. 954]; *Roeder* v. *Roeder,* 118 Cal.App.2d 572 [258 P.2d 581].)

■ The provisions of paragraph 11 speak for themselves.

The trial judge correctly interpreted the language therein set forth. It is to be noted that the provisions require in effect, in part, that the license agreement can be terminated by Allen if a notice of intention is given "not less than ninety (90) days prior to the expiration of any year *and* the payment of all —— moneys due the licensor at the time of such termination." It is clear from the evidence that all moneys due Blackburn had not been paid at the time of the alleged intended termination.

The license agreement in this case is in no sense an agreement of employment of Blackburn by Allen. Blackburn was under no duty to seek gainful employment after receiving Allen's purported notice of termination of the agreement. There was nothing in the written agreement to the effect that Blackburn should seek to secure gainful employment from others and to receive wages therefor.

Allen lastly contends that the court failed in effect to make findings as to whether Blackburn's affairs with Richardson (the items and matters referred to in the letter of understanding) were out of danger from further complications and as to whether under the letter of understanding Allen was entitled to participate as an equal owner with Blackburn in certain inventions. The court in making its findings necessarily found that Allen did not become a part owner of anything at the time of the breach of the license agreement. Failure to find on a pleaded issue is not necessarily error where, if a finding were made, it would have been adverse to the complaining party. (*Stone* v. *Lobsien,* 112 Cal.App.2d 750 [247 P.2d 357].) Findings in this case were made on all of the issues which had to do with a determination of the cause and any other finding was unnecessary. See *Kux* v. *Cal-West Lumber Corp.,* 162 Cal.App.2d 500 [328 P.2d 240]; see also *Thornton* v. *Stevenson,* 185 Cal.App.2d 708 [8 Cal.Rptr. 603]; *Barnes* v. *Persson,* 131 Cal.App.2d 515 [280 P.2d 821]; *Myers* v. *Mitchell,* 176 Cal.App.2d 616, 618 [1 Cal.Rptr. 593].)

We find no merit in any of Allen's assertions or contentions and in any event there is no reversible error.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 4, 1963.