[Civ. No. 17220. Fourth Dist., Div. Two. Sept. 21, 1977.]

PACIFIC WATER CONDITIONING ASSOCIATION, INC.,
Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF RIVERSIDE et al.,
Defendants and Respondents.

## COUNSEL

Ebben & Brown, Ebben, Brown, Winfield & Canzoneri and Thomas F. Winfield III for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, R. H. Connett, Assistant Attorney General, Edwin J. Dubiel and Emil Stipanovich, Jr., Deputy Attorneys General, John Woodhead, City Attorney, Edward Duddy and Barbara Purvis, Assistant City Attorneys, and Clarice Turney, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**KAUFMAN, J.**—Petitioner Pacific Water Conditioning Association, Inc. (hereinafter Association) sought a writ of mandate to compel the California Regional Water Quality Control Board, Santa Ana Region (hereinafter Regional Board) to vacate a cease and desist order issued by it to the City of Riverside (hereinafter City) and to compel City to

vacate an ordinance enacted by it amending City's waste discharge regulations. The trial court denied the writ, and Association appeals.

## Background

The Porter-Cologne Water Quality Control Act (Wat. Code, § 13000 et seq.) establishes a coordinated system of water quality control overseen by the State Water Resources Control Board (hereinafter State Board) and administered by nine regional water quality control boards. (See Wat. Code, §§ 13140, 13200 et seq.) Any person who proposes to discharge waste which could affect the quality of the waters of the state must file a report of waste discharge with the appropriate regional board. (Wat. Code, § 13260.) The regional board must then prescribe "requirements" as to the nature of the proposed discharge. (Wat. Code, §§ 13263, 13377, 13378.) Such "requirements" must implement any relevant Regional Water Quality Plan and must consider the beneficial uses of the water affected by the discharge. (*Id.*)

When a regional board finds that a discharge of waste is taking place or threatens to take place in violation of the requirements prescribed by order of the regional or state boards, the regional board may issue a cease and desist order. (Wat. Code, § 13301.)

The Porter-Cologne Act provides for State Board review of any action or failure to act by a regional board with regard to the setting of waste discharge requirements or the issuance of cease and desist orders. (Wat. Code, § 13320.) "Any aggrieved person" may petition the State Board within 30 days of any action or failure to act by a regional board (*id.*) and, within 30 days of the decision of the State Board, any party aggrieved by the State Board action may file a petition for writ of mandate for review by the superior court. (Wat. Code, § 13330.)

## Facts

Association is a trade association of retail dealers, manufacturers and suppliers in the point-of-use water conditioning industry. Among its members are persons and firms doing business in or serving customers in the City of Riverside.

Pursuant to its responsibilities and authority under the Porter-Cologne Act and the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.) Regional Board issued waste discharge requirements for City

on March 22, 1974 by order 74-3. This order established limitations upon the chemical content of sewage effluent discharged by City. Among other things, it specifically required a reduction in sodium and chloride discharges.

On May 29, 1975, having found City violating or threatening to violate order 74-3, after a public hearing, Regional Board issued order 75-141, a cease and desist order, requiring City to comply with order 74-3.

To come into at least partial compliance with order 75-141, City proposed to amend chapter 14.12 of the Riverside Municipal Code regulating the discharge of wastes into City's sewage system by the enactment of Ordinance No. 4222 which would limit the discharge of certain chemicals, including sodium and chloride, and thereby improve the quality of City's effluent into the Santa Ana River and underground waters. It was recognized that the enactment of Ordinance No. 4222 would have a substantial impact upon users of automatic on-site regenerating water softeners and the point-of-use water conditioning industry.[1]

On June 25, 1975, City's environmental protection commission held a public meeting at which it heard statements from interested persons including Association's executive director, reviewed an environmental assessment prepared by City's director of public works and determined that the enactment of Ordinance No. 4222 would not have a significant adverse effect on the environment.

The determination of the environmental protection commission was appealed by Association to the Riverside City Council. On July 22, 1975, the council considered the appeal and upheld the determination of the environmental protection commission, finding, among other things, that enactment of the proposed ordinance could not possibly have a significant adverse effect on the environment.

On August 19, 1975, Ordinance No. 4222 was introduced and on August 26, 1975, it was adopted. As adopted, the ordinance was legally defective in that it failed to specify certain operative dates. The defect

---

[1]The ordinance prohibits discharge into the sewer system or the ground from water conditioning equipment having a mineral capacity in excess of two cubic feet. It permits continued use of existing self-regenerating units with a mineral capacity of two cubic feet or less and in no way prohibits the use or installation of existing or new units that do not discharge into the sewage system or the ground.

not having been noticed at that time, on August 21, 1975, pursuant to Public Resources Code section 21152 and the guideline contained in title 14, California Administrative Code, section 15083, City filed with the Clerk of the County of Riverside a notice of determination and negative declaration. Having become aware of the defect, on September 23 and September 30, 1975, respectively, a corrected version of Ordinance No. 4222 was introduced and adopted. On October 7, 1975, City filed with the county clerk a new notice of determination and a new negative declaration to which was attached a copy of the environmental assessment prepared by City's director of public works and a copy of a report dated June 17, 1975, from the city manager to the council. The negative declaration recited the city council's determination that adoption of Ordinance No. 4222 would have no significant effect on the environment.

It is undisputed that no environmental impact report (EIR) was prepared prior to Regional Board's issuance of order 75-141 and that no EIR was prepared prior to City's adoption of Ordinance No. 4222.

### Contentions on Appeal

Association contends that both order 75-141 and Ordinance No. 4222 are invalid because each was required to be preceded by the preparation and consideration of an EIR under the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq., hereinafter sometimes referred to as CEQA); that the negative declaration filed by City was fatally defective; that order 75-141 is invalid because it specifies the manner of compliance therewith in violation of Water Code section 13360; that the judgment must be reversed because the trial court failed to make findings on material facts; and that Association was not required to exhaust administrative remedies because it was not a party to the Regional Board proceedings, it was not "aggrieved" within the statutory appeal period and it would have been futile to appeal.

With respect to order 75-141, Regional Board contends that Association failed to exhaust its administrative remedies, that there is no authority for review of an action of a regional board by writ of mandate; that order 75-141 does not specify the manner of compliance therewith in violation of Water Code section 13360; that the trial court's findings of fact are adequate to support the judgment; that no EIR was required because the issuance of order 75-141 was not a "project" within the meaning of CEQA; the issuance of order 75-141 had no significant effect on the environment, if issuance of the order was a "project," it was only

a ministerial project; the Regional Board was not the lead agency; if issuance of the order constituted a "project" it was categorically exempt under CEQA; and issuance of the order was specifically exempt from CEQA by the Porter-Cologne Act.

With respect to Ordinance No. 4222, City contends that findings of the trial court are adequate to support the judgment; that its negative declaration was not fatally defective and resulted in no prejudice to Association; and that no EIR was required because the trial court found substantial evidence to support City's determination that enactment of Ordinance No. 4222 would not have a significant effect on the environment and that it was categorically exempt under CEQA.

We find it unnecessary to consider and discuss all of the contentions of the parties, for several of the contentions are dispositive. Neither our failure to discuss a particular issue nor any assumption implicit in our failure to consider such issue should be understood as implying our opinion thereon.

*Discussion*

*Order 75-141—Specification of Manner of Compliance*

■ The contention that order 75-141 is invalid because it specifies the manner of compliance in violation of Water Code section 13360[2] is devoid of merit. Reading the order discloses that it goes no further than ordering City to comply with certain portions of order 74-3 in accordance with a prescribed time schedule. It contains nothing whatever pertaining to the manner in which compliance should be had. It is apparently Association's position that Regional Board and, indeed, all parties knew full well that the only way in which City could comply with the order was to amend its regulations pertaining to the discharge of wastes in the manner Ordinance No. 4222 does. That may be true, but it is of no legal significance. ■ Courts do not inquire into the physical and mental processes by which an administrative agency and its members arrived at their decision. (*Board of Administration* v. *Superior Court,* 50 Cal.App.3d 314, 319 [123 Cal.Rptr. 530].) Assuming that what Association says is true, the manner of compliance is prescribed by the circumstances, not the order, and there is no violation of Water Code section 13360.

---

[2]Water Code section 13360 provides in pertinent part: "No . . . order of a regional or state board . . . issued under the provisions of this division shall specify the . . . particular manner in which compliance may be had with such . . . order . . . and the person so ordered shall be permitted to comply therewith in any lawful manner; . . ."

*Order 75-141—Compliance with CEQA*

Public Resources Code section 21100 provides in pertinent part: "All state agencies, boards, and commissions shall prepare, or cause to be prepared . . . and certify the completion of an environmental impact report on any project they propose to carry out or approve which may have a significant effect on the environment." Public Resources Code section 21065, subdivision (a) includes within the definition of "project," "[a]ctivities directly undertaken by any public agency."

We agree with Regional Board that its promulgation of order 75-141 is not a governmental activity "which may have a significant effect on the environment" within the meaning of Public Resources Code section 21100. Any environmental effect flows from order 74-3 in which requirements were originally fixed, not from order 75-141, the subsequent cease and desist order. However, this determination is not ours to make in the first instance, and the record does not reflect that Regional Board considered the problem or made any such determination. We do not, therefore, base our decision on this ground. We have, however, concluded that promulgation of order 75-141 was exempt from the requirements of CEQA on two separate bases.

## 1. *The Porter-Cologne Act*

The Porter-Cologne Act, Water Code section 13389, provides in pertinent part: "Neither the state board nor the regional boards shall be required to comply with the provisions of Chapter 3 (commencing with Section 21100) of Division 13 of the Public Resources Code [CEQA] prior to the adoption of any waste discharge requirement . . . ." Thus, Regional Board could and did properly prescribe waste discharge requirements for City by order 74-3 without preparation of an EIR under the specific exemption of Water Code section 13389. The question is whether that statutory exemption extends to issuance of a cease and desist order subsequent to the promulgation of waste discharge requirements. We hold it does.

A cease and desist order is merely an enforcement technique. It is the first step by which a regional board may seek to enforce a waste discharge requirement previously promulgated by the regional board or State Board (See Wat. Code, § 13301 et seq.). Ordinarily, as here, all environmental consequences flow from the original order promulgating requirements, and a subsequent cease and desist order will have no

environmental effects beyond those resulting from the original order. It would be nonsensical to permit promulgation of requirements without preparation of any EIR but to require preparation of an EIR as a prerequisite to issuance of an order which does no more than command compliance with the original order.

Moreover, by definition it would be ridiculous to make preparation of an EIR a prerequisite to issuance of such a cease and desist order. Public Resources Code section 21061 provides in part: "An environmental impact report is an informational document which . . . shall be considered by every public agency *prior to its approval or disapproval of a project.* The purpose of an environmental impact report is to provide public agencies and the public in general with detailed information about the effect which a proposed project is likely to have on the environment; to list ways in which the significant effects of such a project might be minimized; and to indicate alternatives to such a project." (Italics added.) In the case of a cease and desist order such as that here involved, the decision, insofar as environmental consequences are concerned, has long since been made—at the time the waste discharge requirement was promulgated.

Association asserts the exemption contained in Water Code section 13389 was granted regional boards only because they have just 120 days to issue waste discharge requirements after receiving a report of intended discharge (Wat. Code, § 13264) and it would be difficult if not impossible to issue such requirements if an EIR were required. Not so. Water Code section 13376 prohibits the discharge of any pollutant even in the absence of waste discharge requirements.

Chapter 5.5 of the Porter-Cologne Act was enacted to allow the State of California to administer the National Pollutant Discharge Elimination System (NPDES) permits program. This chapter was patterned after the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.) which created the NPDES permit system. Section 1371 of that act (33 U.S.C. § 1371(c)) excludes the issuance of NPDES permits from the requirements of the National Environmental Policy Act (NEPA) after which CEQA was patterned (see *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247, 260-261 [104 Cal.Rptr. 761, 502 P.2d 1049]). ■ It is fairly apparent that the exemption for the promulgation of waste discharge requirements from CEQA contained in Water Code section 13389 was meant to parallel the exemption for the issuance of NPDES permits from the requirements of NEPA found in section 1371 of the federal act.

## 2. *Categorical Exemption*

As authorized by Public Resources Code sections 21084 and 21085 the secretary of the resources agency has designated as categorically exempt certain classes of projects which have been determined not to have a significant effect on the environment. These classes are listed in sections 15101 to 15120 in title 14 of the California Administrative Code. Section 15107 reads in pertinent part: "Class 7 consists of actions taken by regulatory agencies as authorized by state law or local ordinance to assure the maintenance, restoration, or enhancement of a natural resource where the regulatory process involves procedures for protection of the environment. . . ." Section 15108 reads in pertinent part: "Class 8 consists of actions taken by regulatory agencies, as authorized by state [*sic*] or local ordinance, to assure the maintenance, restoration, enhancement, or protection of the environment where the ·regulatory process involves procedures for protection of the environment. . . ."

■ The issuance of cease and desist order 75-141 is categorically exempt under either section 15107 or 15108. It is an action authorized by state law (Wat. Code, § 13301) to assure the maintenance, ·restoration, enhancement and protection of the environment and a natural resource, water.

Our conclusion in this regard coincides with a determination made by State Board as reflected in its regulations. Title 23, California Administrative Code, section 2714, subdivision (d)(4) gives categorical exemption to regulatory activities by State Board of any regional board to assure the maintenance, restoration or enhancement of a natural resource or to assure the maintenance, restoration, enhancement or protection of the environment, including "[e]nforcement activities, such as . . . adoption of orders or resolutions related to enforcement of water quality. . . ." A cease and desist order is just such an order.

*Ordinance 4222—Compliance with CEQA*

■ If after an initial study a public agency determines that a proposed project which could possibly have a significant effect on the environment will, in fact, not have a significant effect, the agency may so declare in a negative declaration and no EIR is required. (Cal. Admin. Code, tit. 14, § 15083; see *No Oil, Inc.* v. *City of Los Angeles*, 13 Cal.3d 68, 74 [118 Cal.Rptr. 34, 529 P.2d 66]; *Bozung* v. *Local Agency Formation Com.*, 13 Cal.3d 263, 279-280 [118 Cal.Rptr. 249, 529 P.2d 1017]; *Running*

*Fence Corp.* v. *Superior Court,* 51 Cal.App.3d 400, 413 [124 Cal.Rptr. 339].)

In its findings of fact and conclusions of law the trial court stated: "There is sufficient substantial evidence in the record to support the City's determination that enactment of Ordinance No. 4222 will have no substantial effect on the environment within the meaning of CEQA."

Association admits as it must that there was such evidence,[3] but it asserts there was also evidence received that enactment of the ordinance would have a significant effect on the environment. ■ It asserts the rule is that a city must prepare an EIR whenever it perceives some substantial evidence that the project may have a significant effect on the environment.

Association is correct that that is the standard to be observed by the agency in making its determination. (*No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d at pp. 82-85; *County of Inyo* v. *Yorty,* 32 Cal.App.3d 795, 809 [108 Cal.Rptr. 377].) But that is not the applicable standard for judicial review. The test to be applied by a reviewing court is whether there is any substantial evidence in light of the entire record to support the decision of the agency. (Pub. Resources Code, §§ 21168, 21168.5; *Running Fence Corp.* v. *Superior Court, supra,* 51 Cal.App.3d at pp. 418-419; *Plan for Arcadia, Inc.* v. *City Council of Arcadia,* 42 Cal.App.3d 712, 725 [117 Cal.Rptr. 96]; see *No Oil, Inc.* v. *City of Los Angeles, supra,* 13 Cal.3d at pp. 74-75.)

Next, Association contends the negative declaration filed by City was defective because it failed to include a sufficient description of the project, a statement of reasons supporting the finding that the project will not have a significant effect on the environment, and a statement indicating who prepared the initial study and where a copy of it might be obtained, all as required by section 15083 of title 14 of the California Administrative Code. Association's attack appears to be leveled at the

---

[3]The possibility of adverse effects on the environment were presented for the Riverside City Council's consideration by Association and by a person representing an association of coin-operated laundry owners and managers. The trial court found, however, that, when the city council heard Association's appeal, it received substantial evidence to support findings that the enactment of Ordinance No. 4222 would not (a) produce a measurably increased amount of air pollution; (b) produce a measurably increased amount of soap or detergent byproducts; (c) produce a significant increase in the use of energy; (d) produce a significant increase in scaling of water heating equipment; (e) significantly increase consumer costs; and (f) worsen the quality of water in consumers' homes. The accuracy of this finding is not challenged by Association.

negative declaration filed August 21, 1975, in connection with the adoption of the legally defective version of Ordinance No. 4222. That negative declaration was superseded, however, by the negative declaration filed October 7, 1975, after a corrected version of Ordinance No. 4222 was introduced and adopted by the city council. The latter negative declaration attaches and incorporates a copy of the environmental assessment prepared by City's director of public works and a copy of a report dated June 17, 1975, from the city manager to the council. Taken together, these documents fully meet the requirements set forth in title 14, California Administrative Code, section 15083. The project is amply described; reasons for the council's finding appear; the initial study is attached; and it recites the name and title of the person who prepared it.

Association complains that the trial court failed to make a finding of fact on the adequacy of City's negative declaration. This complaint is unjustified. ■ In the first place, the question whether a negative declaration complies with the statutory and regulatory provisions is a question of law upon which no finding of fact is required. Secondly, amongst the trial court's conclusions of law we find: "The steps taken by the City in determining that the enactment of Ordinance 4222 would not have a substantial adverse effect on the environment were legally sufficient." Last, we have closely examined Association's objections to proposed findings and request for special findings, and we have found no request for either a finding of fact or conclusion of law on the sufficiency of the negative declaration.

*Sufficiency of the Findings*

■ Aside from its complaint about the lack of a finding on the adequacy of the negative declaration, which we have already discussed, Association does not specify the particulars of its contention that the trial court failed to find on material facts. It attempts to pursue this contention by incorporating into its brief by reference a document entitled "PETITIONER'S OBJECTIONS TO PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW; PROPOSED COUNTER-FINDINGS, CORRECTIONS AND AMENDMENTS; AND REQUESTS FOR SPECIAL FINDINGS" filed in the trial court. This is not an acceptable appellate technique. An appellate brief should be self-contained. The document referred to consists of 13 pages and contains literally dozens of contentions concerning the adequacy and propriety of the court's findings and conclusions. We are, in effect, invited to speculate precisely which contentions Association wishes to assert on appeal. We decline the invitation.

We have, however, examined the court's findings and conclusions and find them adequate to support the judgment. As to order 75-141 the court concluded that Regional Board properly issued cease and desist order 75-141 and that a regional board may issue cease and desist orders to enforce previously issued waste discharge requirements without obtaining or preparing an environmental impact report. With respect to Ordinance No. 4222, the court found that after a hearing at which evidence was taken, the city council found the enactment of Ordinance No. 4222 would not have a significant effect on the environment. The court concluded that that finding was supported by substantial evidence. As previously noted, the court also concluded that the steps taken by City in determining that the enactment of Ordinance No. 4222 would not have a significant effect on the environment were legally sufficient. These findings and conclusions are sufficient to dispose of the case and support the judgment. ■■■ Where findings are made on issues which determine the cause, the absence of findings on other issues is not a ground for reversal. (*Leonard* v. *Fallas*, 51 Cal.2d 649, 653 [335 P.2d 665]; *Santoro* v. *Carbone*, 22 Cal.App.3d 721, 730 [99 Cal.Rptr. 488]; *Blackburn* v. *Allen*, 218 Cal.App.2d 30, 35 [32 Cal.Rptr. 211].)

*Disposition*

The judgment is affirmed.

Tamura, Acting P. J., and Morris, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 17, 1977.