[No. C000501. Third Dist. June 15, 1987.]

COMMITTEE FOR A PROGRESSIVE GILROY, Plaintiff and Appellant, v.
STATE WATER RESOUCES CONTROL BOARD et al., Defendants and Respondents;
CITY OF GILROY et al., Real Parties in Interest and Respondents.

COUNSEL

Tichinin & Mitchell and Bruce Tichinin for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, R. H. Connett, Assistant Attorney General, and M. Anne Jennings, Deputy Attorney General, for Defendants and Respondents.

Berliner, Cohen & Biagini, Andrew L. Faber, Linda A. Callon and Russell J. Hanlon for Real Parties in Interest and Respondents.

**OPINION**

**SPARKS, J.**—In this environmental case we are called upon to decide whether judicial review of a decision of the State Water Resources Control Board concerning waste discharge levels for a municipal sewage treatment facility is governed by the limitation period of the California Environmental

Quality Act (CEQA) or the Porter-Cologne Water Quality Control Act. We hold that CEQA claims are governed by the CEQA statute of limitations.

Plaintiff Committee for a Progressive Gilroy petitioned for a writ of mandate to compel defendants Regional Water Control Board, Central Coast Region (Regional Board) and State Water Resources Control Board (State Board) to set aside certain orders and decisions relating to a wastewater treatment plant operated by the real parties in interest City of Gilroy and City of Morgan Hill. The trial court denied the petition on the ground that it was barred by the statute of limitations contained in the Porter-Cologne Water Quality Control Act. Plaintiff appeals, contending that the CEQA limitation applies instead and that its petition was timely under that act. Although we agree on that point, we nevertheless conclude that the trial court's decision was legally correct on other grounds and therefore affirm it.

## FACTUAL AND PROCEDURAL BACKGROUND

The cities of Gilroy and Morgan Hill jointly operate a municipal sewage wastewater treatment plant in south Santa Clara County. Wastewater is treated in aeration ponds in the facility and then discharged into 230 acres of evaporation-percolation ponds. The treated wastewater is eventually discharged into Llagas Creek, a tributary to Pajaro River. The facility was built to its current capacity as the result of a project to replace an antiquated plant in the mid-1970's. In connection with the original project the City of Gilroy acted as the "lead agency" under CEQA (Pub. Resources Code, § 21000 et seq.), and caused to be prepared a final environmental impact report (EIR) for a projected capacity of 6.4 million gallons per day (mgd) on an average daily dry weather flow basis.[1] That final EIR was not judicially challenged.

Under the Porter-Cologne Act, the Regional Board was required to set discharge requirements for the revamped wastewater treatment facilities. (See Wat. Code, § 13263.) In 1981, after completion of the Gilroy-Morgan Hill facility expansion project, the Regional Board issued order number 81-02 setting requirements for the facility. Among other things, the order set a maximum flow of 6.1 mgd for the facility.

In 1982 and 1983, the cities encountered aeration and percolation problems in the operation of the facility. These problems resulted in excessive

---

[1] The lead agency is "the public agency which has the principal responsibility for carrying out or approving a project which may have a significant effect upon the environment." (Pub. Resources Code, § 21067.)

odors and in the unauthorized discharge of wastewater into Llagas Creek. In response to these difficulties the Regional Board issued a cease and desist order against the cities in 1983. As part of the enforcement action, and pursuant to a stipulation in a legal action, the Regional Board issued an order temporarily prohibiting the City of Gilroy from permitting new connections to its sewer system. In January 1984, the Regional Board adopted order number 84-06 prescribing requirements for discharge from the facility. Among the requirements was a reduction of the permitted daily flow to a maximum of 5.15 mgd.

The cities then undertook remedial action. They purchased and developed an additional 163 acres for percolation ponds. In connection with the pond development, the cities adopted a negative declaration under CEQA.[2] (See Pub. Resources Code, §§ 21064, 21080, subd. (c).) Once again, no judicial challenge was made to this negative declaration. The cities also replaced the aeration system which had malfunctioned with a new, conventional system. In addition, the cities replaced the city officials responsible for the management of the plant, and contracted with a qualified consulting firm to manage the plant.

In November 1984, after a hearing at the request of the cities, the Regional Board issued the first of the two orders challenged here, order number 84-97. Among other things, this order permitted an increase in plant capacity to 5.30 mgd. At that time the Regional Board also rescinded the connection ban against the City of Gilroy. In May 1985, after further hearings, the Regional Board adopted the second order, number 85-83, which permitted the cities to operate the facility at the originally approved level of 6.1 mgd.

Plaintiff sought review of the Regional Board's orders by the State Board. Among other grounds, plaintiff contended that the Regional Board was required to prepare a new EIR before permitting an increase in the capacity at which the cities could operate the facility. The State Board rejected that argument, ruling that the Regional Board was not required to prepare an EIR when setting requirements for an existing facility. The State Board reasoned that the "regulations implementing CEQA make clear that a new EIR need not be prepared where an agency is approving an existing facility. (Cal. Admin. Code, tit. 14, § 15301.) In fact, an EIR or negative declaration prepared by a lead agency (in this case, the Cities) is conclusively presumed to comply with CEQA for purposes of use by responsible agencies, such as the Regional Board. (Cal. Admin. Code, tit. 14, § 15231.) The only excep-

---

[2] A negative declaration is "a written statement briefly describing the reasons that a proposed project will not have a significant effect on the environment and does not require the preparation of an environmental impact report." (Pub. Resources Code, § 21064.)

tions to this rule are where the environmental document is determined to be invalid in court proceedings (§ 15231(a)) and where a subsequent EIR is necessary (§ 15231(b)). There has been no such court ruling in this case, and none of the criteria requiring preparation of a subsequent EIR has been met. (Cal. Admin. Code, tit. 14, § 15162(a).)" The decision of the State Board upholding the orders of the Regional Board was adopted on August 22, 1985, and was served on plaintiff on September 3, 1985.

On January 30, 1986, plaintiff filed its petition for a writ of mandate against the two boards, naming the cities as real parties in interest. Plaintiff sought a writ compelling the boards to rescind their orders and decisions and to require the Regional Board to prepare an EIR prior to authorizing any increase in capacity for the Gilroy-Morgan Hill wastewater treatment facility. Plaintiff alleged that the Regional Board abused its discretion and failed to proceed in the manner required by law when it adopted the orders increasing the permitted flows first to 5.3 mgd and then to 6.1 mgd because it did not prepare an EIR for either order. The trial court denied the petition on the ground that it was untimely under Water Code section 13330, subdivision (a). This appeal followed.

## DISCUSSION

Plaintiff launches its appellate attack by asserting that the CEQA limitation period applies to this writ proceeding and not the Water Code statute of limitations. The Water Code limitation, it contends, applies only to litigation concerning duties imposed by the Porter-Cologne Water Quality Control Act (Wat. Code., § 13000 et seq.) and not to cases such as this one relating only to CEQA duties. This follows, it claims, by virtue of the rules of statutory construction and for reasons of public policy. On the merits, plaintiff contends that the ordered capacity increases were not categorically exempt under the existing facilities exemption of CEQA because they constituted an expansion of use. Since these increases were not exempt and in light of the substantial evidence of their potentially significant effect on the environment, an EIR was required to be prepared before the increases could be approved.

The regional and state boards parry this thrust with a triple shield. First, they contend this action is governed by the Water Code and hence is timebarred by Water Code section 13330. Next, they assert that even if CEQA might otherwise apply, it does not control this case because the reissuance of water discharge requirements is not a CEQA project. Finally, they argue that even if those requirements could be deemed a project within the meaning of CEQA, such a project would have been exempt under the

existing facility exemption. The cities advance the same arguments and add one more: The Water Code contains an express CEQA exemption for waste discharge which applies to this case.

We begin by setting the legal stage for this judicial battle and start with the Water Code. By the enactment of the Porter-Cologne Act, the Legislature declared that "the people of the state have a primary interest in the conservation, control, and utilization of the water resources of the state, and that the quality of all the waters of the state shall be protected for use and enjoyment by the people of the state." (Wat. Code, § 13000.) As the Court of Appeal observed in *Hampson* v. *Superior Court* (1977) 67 Cal.App.3d 472 [136 Cal.Rptr. 722], "[t]he state water quality control legislation is designed to regulate the factors and activities which may affect the quality of the waters of the state, in order to protect the quality of water for the use and enjoyment of all of the people of the state. To this end, the Legislature has established a legislative procedure for the development of a statewide program of water quality control. The plan provides for regional administration within the framework of statewide coordination and policy." (*Id.*, at p. 484.) The state is divided into nine regions for purposes of the Porter-Cologne Water Quality Control Act, each of which is governed by a regional board. (Wat. Code, §§ 13200, 13201.) The governing board here was the Central Coast Regional Water Quality Control Board. (Wat. Code, § 13200, subd. (c).) Each regional board is mandated to "formulate and adopt water quality control plans for all areas within the region." (Wat. Code. § 13240.) In those plans the regional board is directed to establish such water quality objectives as will "ensure the reasonable protection of beneficial uses [of waters of the state] and the prevention of nuisance . . . ." (Wat. Code, § 13241.)

The regional boards are also directed to prescribe requirements for discharges of waste. Section 13263, subdivision (a) of the Water Code provides: "The regional board, after any necessary hearing, shall prescribe requirements as to the nature of any proposed discharge, existing discharge, or material change therein, except discharges into a community sewer system, with relation to the conditions existing from time to time in the disposal area or receiving waters upon or into which the discharge is made or proposed. The requirements shall implement relevant water quality control plans, if any have been adopted, and shall take into consideration the beneficial uses to be protected, the water quality objectives reasonably required for that purpose, other waste discharges, the need to prevent nui-

sance, and the provisions of Section 13241 [relating to regional water quality control plans]."[3]

Anyone who proposes to discharge waste which could affect the quality of the waters of this state must file a report of waste discharge with the appropriate regional board. (Wat. Code, § 13260.) In this case, the Gilroy City Administrator filed such a report on June 14, 1983, seeking authorization to increase the level of discharge for treated municipal wastewater into the Pajaro River sub-basin. When a waste discharge report is filed, the regional board must then "prescribe 'requirements' as to the nature of the proposed discharge. (Wat. Code, §§ 13263, 13377, 13378.) Such 'requirements' must implement any relevant Regional Water Quality Plan and must consider the beneficial uses of the water affected by the discharge." (*Pacific Water Conditioning Assn., Inc.* v. *City Council* (1977) 73 Cal. App.3d 546, 551 [140 Cal.Rptr. 812].)

Administrative review of the action of a regional board is by petition to the State Board. (Wat. Code, § 13320, subd. (a).) If dissatisfied with the decision of the State Board, any aggrieved party may seek timely judicial review by way of a writ of mandate. (Wat. Code, § 13330, subd. (a).)

We turn next to CEQA. Declaring "[t]he maintenance of a quality environment for the people of this state now and in the future is a matter of statewide concern" (Pub. Resources Code, § 21000, subd. (a)), the Legislature enacted CEQA in 1970. (Stats. 1970, ch. 1433). In general, CEQA "requires various state and local governmental entities to submit environmental impact reports before undertaking specified activity. These reports compel state and local agencies to consider the possible adverse consequences to the environment of the proposed activity and to record such impact in writing." (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 254-255 [104 Cal.Rptr. 761, 502 P.2d 1049].)

Under CEQA, the "lead agency, once determined, is responsible for conducting an initial study of the project to determine whether it may have a significant effect on the environment. If it is found that the project will

---

[3]The discharge of waste into state waters is a privilege and consequently no vested right can be obtained to continue such discharge. (Wat. Code, § 13263, subd. (g).) The regional board may review and revise discharge requirements on the application of any affected person or on its own motion, and all requirements must be periodically reviewed. (Wat. Code, § 13263, subd. (e).) The requirements imposed by the board may contain a time schedule which is subject to revision in the discretion of the board. (Wat. Code, § 13263, subd. (c).)

have no significant effect on the environment, a negative declaration is prepared, describing the project and indicating that it will have no significant effect." (Cal. Condominium and Planned Development Practice (Cont.Ed.Bar 1984) § 2.79, p. 134; citations omitted.) On the other hand, if the initial study indicates that the project may have a significant effect on the environment, the lead agency must prepare an EIR. "All state agencies, boards, and commissions shall prepare, or cause to be prepared by contract, and certify the completion of an environmental impact report on any project they propose to carry out or approve which may have a significant effect on the environment." (Pub. Resources Code, § 21100.) The EIR must include a detailed statement concerning the environmental effects, alternatives and other relevant factors concerning the project. (Pub. Resources Code, § 21100.)

Review of CEQA decisions where hearings and evidence are required and discretion vested in the public agency is by way of administrative mandamus. "Any action or proceeding to attack, review, set aside, void or annul a determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency, on the grounds of noncompliance with the provisions of this division shall be in accordance with the provisions of Section 1094.5 of the Code of Civil Procedure." (Pub. Resources Code, § 21168.) The stage set, we turn to the contentions on appeal.

## I. *Statute of Limitations*

Water Code, section 13330, subdivision (a) provides in relevant part: "Within 30 days after service of a copy of a decision and order issued by the state board under Section 13320, any aggrieved party may file with the superior court a petition for a writ of mandate for review thereof."[4] ▮ It is this 30-day limitation period that the boards and cities contend bars plaintiff's petition. In this case plaintiff sought judicial review of the State Board's decision but did not file its petition for a writ of mandate for nearly five months, a period well in excess of the 30-day period required by this statute. Plaintiff retorts that its action is not time-barred because the only objection it is now asserting to the Regional Board's orders is the

---

[4] In such a writ proceeding, the "evidence before the court shall consist of the record before the state board, including the regional board's record, and any other relevant evidence which, in the judgment of the court, should be considered to effectuate and implement the policies of this division. In every such case, the court shall exercise its independent judgment on the evidence." (Wat. Code, § 13330, subd. (b).)

failure to prepare an EIR under CEQA. Plaintiff urges that the CEQA statute of limitations rather than the Water Code statute of limitations is applicable.

The statute of limitations applicable to CEQA is found in Public Resources Code section 21167.[5] That section provides a number of limitations periods, which are generally short (30 or 35 days). In two circumstances an action may be brought within 180 days. These are where a public agency is carrying out or has approved a project without determining whether it will have a significant effect on the environment, and where the agency has determined that the project is not subject to CEQA but has failed to file a notice of the determination. (Pub. Resources Code, § 21167, subds. (a), (d).) Plaintiff's petition alleged that the boards improperly determined that the project was not subject to CEQA and since it is undisputed here that notice of determination triggering a 35-day statute of limitation was not filed by either board, the time period for filing under CEQA was "within 180 days of the public agency's decision to carry out or approve the project ...." (Pub. Resources Code, § 21167, subd. (d).) Thus, plaintiff's petition was timely filed if the CEQA limitation period governs this action.

---

[5]Public Resources Code section 21167 provides: "Any action or proceeding to attack, review, set aside, void, or annul the following acts or decisions of a public agency on grounds of noncompliance with this division shall be commenced as follows: [¶] (a) An action or proceeding alleging that a public agency is carrying out or has approved a project which may have a significant effect on the environment without having determined whether the project may have a significant effect on the environment shall be commenced within 180 days of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days after commencement of the project. [¶] (b) Any action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days after the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152. [¶] (c) Any action or proceeding alleging that an environmental impact report does not comply with the provisions of this division shall be commenced within 30 days after the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152 by the lead agency. [¶] (d) Any action or proceeding alleging that a public agency has improperly determined that a project is not subject to the provisions of this division pursuant to subdivision (b) of Section 21080 or pursuant to Section 21085 or 21172 shall be commenced within 35 days after the filing by the public agency, or person specified in subdivision (b) or (c) of Section 21065, of the notice authorized by subdivision (b) of Section 21108 or subdivision (b) of Section 21152. If such notice has not been filed, such action or proceeding shall be commenced within 180 days of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days after commencement of the project. [¶] (e) Any action or proceeding alleging that any other act or omission of a public agency does not comply with the provisions of this division shall be commenced within 30 days after the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152."

For the reasons which follow, we conclude that the CEQA statute of limitations applies when review is sought on CEQA grounds. First of all, the language of the CEQA statute of limitations expressly governs when "[a]ny action or proceeding" to review the decisions of any "public agency" on ground of noncompliance with CEQA must be commenced. (Pub. Resources Code, § 21167.) ■ Under settled rules of statutory construction, "a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].) This rule applies to statutes of limitations and consequently a specific statute must take precedence over general statutes of limitation. ■ ■ Thus, in *Walters* v. *County of Plumas* (1976) 61 Cal.App.3d 460, 469 [132 Cal. Rptr. 174], where one of the issues was whether a validating statute time limit applied to the claim that the county failed to prepare an EIR, we held that "the Environmental Quality Act of 1970 has its own statute of limitations, Public Resources Code section 21165 et seq., which being specifically applicable, takes precedence over the general provisions of Code of Civil Procedure section 860." By a parity of reasoning, the CEQA statute of limitations also takes precedence over the general provisions of Water Code section 13330.

■ Second, the scope of judicial review under the Porter-Cologne Act is incompatible with the review accorded under CEQA. Under the Water Code, "the court shall exercise its independent judgment on the evidence." (Wat. Code. § 13330, subd. (b).) In contrast, under CEQA "The court shall not exercise its independent judgment on the evidence but shall only determine whether the act or decision is supported by substantial evidence in the light of the whole record." (Pub. Resources Code. § 21168.) It would be anomalous to apply the Water Code limitation period and yet simultaneously use the different scope of review under CEQA. This judicial mongrelization has little to commend itself. Indeed, it would be unworkable. Under CEQA, with certain limited exceptions, the EIR is conclusively presumed to be valid for purposes of its use by responsible agencies "[i]f no action or proceeding alleging that an environmental impact report does not comply with the provisions of this division is commenced during the period prescribed in subdivision (c) of Section 21167 ...." (Pub. Resources Code, § 21167.2.) This conclusive presumption is triggered by CEQA limitations and not some other statute of limitations applicable to some particular state agency. Moreover, the Legislature has expressly provided for review of

CEQA decisions made by public agencies and has established a comprehensive statute of limitations for that review. Nothing in that statute suggests that the nature and timing of the review depends upon the identity of the state agency involved. Since CEQA applies to every public agency, many of which have their own statute of limitations for ordinary review purposes, literally scores of limitation periods might arguably govern review of CEQA decisions. Such a chameleonic construction would render the CEQA periods at best superfluous and at worst a trap for the unwary petitioner. Furthermore, when the Legislature has intended that the state and regional boards would be exempt from the requirements of CEQA it has expressly so stated. Thus in Water Code section 13389, a provision we consider below, when the orders are required by the Federal Water Pollution Control Act, the boards are explicitly relieved of the duty "to comply with the provisions of Chapter 3 (commencing with Section 21100) of Division 13 of the Public Resources Code [the CEQA chapter dealing with state agencies, boards and commissions] prior to the adoption of any waste discharge requirement ...." Nothing in any other Porter-Cologne Act statute expressly relieves any aggrieved party of the duty to comply with the CEQA limitations for commencing an action to review CEQA decisions. Finally, we are enjoined as a matter of public policy to interpret CEQA "in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (*Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d at p. 259.) That injunction precludes our substituting some shorter statute of limitations for the CEQA limitation periods. In sum, the language of the statute, the structure of the statutory scheme, the rules of construction, and the dictates of public policy all lead inexorably to the conclusion that the CEQA statute of limitations governs the timing of judicial actions to review CEQA actions and decisions.

The Attorney General replies that it is only in rare cases that regional board orders are subject to CEQA requirements and that most writ proceedings involving the water boards seek review of matters unrelated to CEQA. That argument hardly rebuts the contention that CEQA limitations apply when review is actually sought for CEQA issues. Undeterred, the Attorney General replies that to hold that CEQA claims are subject to one limitation period while Porter-Cologne Act claims are subject to another would produce absurd results with two separate writ petitions filed at different times. Under this scenario, judicial economy would be squandered amid the spectre of inconsistent results. Although not the case here, we concede the possibility that a petitioner may well raise both CEQA and non-CEQA grounds in its writ application. The solution is to require one timely filing for all of the separate claims. ■ Thus when a petitioner

seeks review of a decision of a public agency on both CEQA and non-CEQA grounds, the petition must be timely filed for each claim. If not timely filed, the petitioner is foreclosed from obtaining review of those claims which are timebarred. The application of different statute of limitations to separate claims in one writ proceeding is not uncommon. Thus, for example, in *California Manufacturers Assn.* v. *Industrial Welfare Com.* (1980) 109 Cal. App.3d 95 [167 Cal. Rptr. 203], petitioner sought a writ of mandate to invalidate orders of the Industrial Welfare Commission regulating the wages, hours and conditions of the employment in certain industries. One of the several grounds advanced was that the commission failed to comply with CEQA prior to its promulgation of the challenged orders. Although orders of the Commission are subject to ordinary judicial review (Lab. Code, § 1190), the trial court held that the association was barred from asserting CEQA claims by the CEQA statute of limitations contained in Public Resources Code section 21167, subdivisions (b) and (e). The Court of Appeal agreed that the claims were barred by the CEQA statute of limitations and affirmed. (*Id.,* at p. 125.) Implicit in this holding is the determination that when CEQA claims are joined with other grounds in an administrative mandamus proceeding, the CEQA statute of limitation applies to the CEQA claims and not the ordinary limitation period generally applicable to judicial review of the agency's decisions.

■■ ■■■ In short, we hold that the trial court erred in denying plaintiff's petition on the ground that it was untimely under Water Code section 13330.[6] But that error does not end the matter or compel reversal. ■ It has long been "the rule that a correct decision of the trial court must be affirmed on appeal even if it is based on erroneous reasons." (*People* v. *Braeseke* (1979) 25 Cal.3d 691, 700 [159 Cal. Rptr. 684]; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266.) In addition

---

[6] Plaintiff also contends that, in any event, it was entitled pursue this action even if the CEQA statute of limitations did not apply because the Water Code limitation period does not apply to "other civil remedies." (Wat. Code, § 13330, subd. (a).) We reject this alternative contention. The purpose of the "other civil remedies" exclusion is clear. The decisions of the state and regional boards with respect to wastewater discharge requirements do not immunize the actions of the discharger from other regulations or actions. Pursuant to Water Code section 13002, cities and counties may regulate water discharges and may declare and abate nuisances, the Attorney General may act to enjoin any pollution or nuisance, other state agencies may enforce and administer other laws, and private citizens may maintain an action against a nuisance or for relief against contamination or pollution, all without limitation by the decisions or rulings of the state or regional boards. (See *People* v. *City of Los Angeles* (1958) 160 Cal.App.2d 494, 502-503 [325 P.2d 639].) In such actions the moving party will not be precluded from pursuing a remedy for the failure to have pursued judicial review of the state and regional board's action. (Wat. Code, § 13330, subd. (a).) However, where the moving party seeks direct judicial review of the state and regional board decisions unrelated to CEQA, then it must comply with the requirements of section 13330, subdivision (a).

to the statute of limitation defense, the boards and cities tendered other grounds. Because they are entitled to have the judgment upheld if it was legally correct even though entered for the wrong reason, we turn to the remaining contentions.

## II.  *Exemption for Waste Discharges*

■  We first dispose of the cities' contention that compliance with CEQA was exempted by Water Code section 13389. That section provides: "Neither the state board nor the regional boards shall be required to comply with the provisions of Chapter 3 (commencing with Section 21100) of Division 13 of the Public Resources Code prior to the adoption of any waste discharge requirement, except requirements for new sources as defined in the Federal Water Pollution Control Act or acts amendatory thereof or supplementary thereto."

The cities argue that since the challenged orders of the Regional Board established waste discharge requirements, this section exempted it from complying with CEQA prior to adopting them. In support of their position, they rely upon *Pacific Water Conditioning Assn., Inc.* v. *City Council, supra,* 73 Cal.App.3d 546. There the court concluded that the "Regional Board could and did properly prescribe waste discharge requirements for City [of Riverside] without preparation of an EIR under the specific exemption of Water Code section 13389." (*Id.,* at p. 555.) The flaw in this argument, as plaintiff correctly notes, is that both the cities and the *Pacific Water* court ignore the limitation placed upon this exemption by Water Code section 13372. This section provides that the "provisions of this chapter [which includes section 13389] shall apply only to actions required under the Federal Water Pollution Control Act, as amended." The challenged orders here were issued under the exclusive authority of the Porter-Cologne Act and were not required by the Federal Water Pollution Control Act. The cities do not contend otherwise. By terms of the statutes read as a whole, the exemption under Water Code section 13389 simply does not apply in this case, a point conceded by the boards. Our agreement with plaintiff, however, stops here.

## III.  *Challenged Orders Were No Longer Subject to Review*

■  We agree with the boards and the cities that plaintiff may not now attack the Regional Board's discharge order under CEQA, not because its petition was untimely filed but rather because on the merits the reestablishment of discharge requirements within levels previously approved under

CEQA was not a new project subject to a new EIR. ■ It is true that a project, by definition, includes "[a]ctivities involving the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (Pub. Resources Code, § 21065, subd. (c).) But it is equally true that a project "means the whole of an action, which has a potential for resulting in a physical change in the environment . . . ." (Cal. Admin. Code, tit. 14, § 15378, subd. (a).) It refers to the underlying activity which may be subject to approval by one or more governmental agencies; it does not refer to each of the several approvals sequentially issued by different agencies. "The term 'project' does not mean each separate governmental approval." (Cal. Admin. Code, tit. 14, § 15378, subd. (c). See also *Orinda Assn.* v. *Board of Supervisors* (1986) 182 Cal.App.3d 1145, 1171-1172 [227 Cal.Rptr. 688].)

■ In this case the project for which an EIR was required was the expansion of the cities' wastewater treatment plant. A final EIR was prepared for that project, and a negative declaration was prepared for the addition of new percolation ponds. Both of those CEQA actions have long been final and cannot be challenged at this time. The reestablishment of discharge requirements within previously approved levels is merely a separate governmental reapproval of the original project and does not itself constitute a new project under CEQA. Unless a subsequent or supplemental EIR is required, the original CEQA actions are conclusive as to the regional and state boards. (Pub. Resources Code, §§ 21080.1, 21167.2.) A subsequent or supplemental EIR may be required where substantial changes are proposed in the project, there are substantial changes in the circumstances under which the project is undertaken which require a major revision in the EIR, or there is new information which was not known and could not have been known at the time of the EIR. (Pub. Resources Code, § 21166.) Plaintiff has not claimed that any of these conditions exist; instead it claims that the order for discharge requirements permitting a return to the original approved capacity is itself a project which requires a new EIR. That claim is untenable. When, as here, "an environmental impact report has been prepared for a project pursuant to this division, no subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of [specified] events occurs . . . ." Since none of those events occurred in this case, no additional EIR was required.[7]

---

[7]Moreover, in the event a subsequent or supplementary EIR were required it would be the duty of the cities, as the "lead agency" to prepare it. (*Bakman* v. *Department of Transportation* (1979) 99 Cal.App.3d 665, 679-680 [160 Cal.Rptr. 583].)

## IV. *Existing Facilities Exemption*

█    Finally, we also agree with the boards and cities that the waste discharge requirements set by the Regional Board were exempt from CEQA under the "[e]xisting facility" categorical exemption. (Cal. Admin. Code, tit. 14, §§ 15301, subd. (b), 15302. See Pub. Resources Code, §§ 21083, 21084, 21087.) Public Resources Code section 21084 directs the Office of Planning and Research to prepare and develop proposed guidelines for the implementation of CEQA. The Legislature has further directed that the guidelines "shall include a list of classes of projects which have been determined not to have a significant effect on the environment and which shall be exempt from the provisions of this division." (Pub. Resources Code, § 21084, subd. (a); see also *Lewis* v. *Seventeenth Dist. Agricultural Assn.* (1985) 165 Cal.App.3d 823, 835-838 [211 Cal.Rptr. 884] (conc. opn. of Blease, J.) In compliance with these directives, guidelines for categorical exemptions of certain classes of projects have been promulgated. One of those classes "consists of the operation, repair, maintenance, or minor alteration of existing public or private structures, facilities, mechanical equipment, or topographical features, involving negligible or no expansion of use beyond that previously existing, including but not limited to: ... [¶] (b) Existing facilities of both investor and publicly-owned utilities used to provide electric power, natural gas, sewerage, or other public utility services." (Cal. Admin. Code. tit. 14, § 15301, subd. (b).)

The cities fully complied with CEQA in building the facility to treat 6.1 mgd, and in adding percolation ponds to the facility. As we have recounted, in the exercise of its authority the Regional Board approved usage up to 6.1 mgd. Thereafter, in view of certain violations, the Regional Board imposed a reduction upon the cities. In response, the cities thereafter took remedial action and complied with CEQA in that undertaking. In the most recent orders the original capacity was restored. Since the project was originally built and approved for 6.1 mgd in full compliance with CEQA, the order restoring that capacity related to an existing facility and was exempt from CEQA.

Plaintiff asserts ex cathedra that a substantial expansion of use was authorized by the challenged orders and hence the categorical exemption for an existing facility does not apply here. That assertion is rebutted by the express finding of the State Board: "[Plaintiff] claims that the increase in flow allowed by the requirements may have a significant effect on the environment, and constitutes a major addition to the facility. It is not necessary to consider, however, the magnitude of the increases from 5.15 mgd to 6.1

mgd, since the original EIR clearly considered even a larger flow than this—6.4 mgd. The exemption for existing facilities has been properly applied in this case." We agree.

The judgment is affirmed.

Blease, Acting P. J., and Carr, J., concurred.

A petition for a rehearing was denied July 9, 1987.