[No. B064495. Second Dist., Div. Two. Jan. 28, 1993.]

MAIN SAN GABRIEL BASIN WATERMASTER et al., Plaintiffs and Respondents, v.
STATE WATER RESOURCES CONTROL BOARD, Defendant and Respondent;
AZUSA LAND RECLAMATION COMPANY, INC., Real Party in Interest and Appellant.

**COUNSEL**

Latham & Watkins, Christopher W. Garrett, Allan J. Abshez, Juli Wilson Marshall, Susan S. Azad and Lisa K. Laursen for Real Party in Interest and Appellant.

Horvitz & Levy, David M. Axelrad, Mitchell C. Tilner, Hufstedler, Kaus & Ettinger, Burton J. Gindler, Donna R. Harvey, Fred Vendig, Karen L. Tachiki, Victor E. Gleason, Moseley & Leech, E. Clarke Moseley, Thomas J. Graff and John W. Krautkraemer for Plaintiffs and Respondents.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Walter E. Wunderlich, Assistant Attorney General, and Douglas B. Noble, Deputy Attorney General, for Defendant and Respondent.

Brunick, Alvarez & Battersby, James W. Anderson, Steven M. Kennedy, Wayne K. Lemieux, Steven O'Neil, McKenna & Fitting, Aaron M. Peck, Terry O. Kelly, Andrew J. Yamamoto, Lagerlof, Senecal, Drescher & Swift, H. Jess Senecal, Jack T. Swafford, McCormick, Kidman & Behrens, Janet Morningstar, Joel Reynolds and Mary Nichols as Amici Curiae on behalf of Plaintiffs and Respondents and Defendant and Respondent.

**OPINION**

**FUKUTO, J.—**

*Introduction*

Appellant and real party in interest, Azusa Land Reclamation Company, Inc. (ALR), appeals from a final judgment denying its motion for a supplemental writ of mandate to direct the State Water Resources Control Board (State Board): (1) to set aside the State Board's reversal of its own previously granted approval of ALR's application for revised waste discharge requirements (WDR's) (Wat. Code, § 13263) under the Porter-Cologne

Water Quality Control Act;[1] and (2) to prepare an environmental impact report (EIR) to evaluate the potential impacts, cumulative impacts, mitigation measures and alternatives to ALR's proposed municipal landfill project, prior to taking any action on the merits of ALR's application. The underlying issue on appeal is whether the California Environmental Quality Act (CEQA) requires the State Board to prepare and consider an EIR before it may disapprove a project that might endanger state waters. We concur with the ruling of the lower court that CEQA imposes no such requirement, and affirm the judgment.

### The History of the Action

For many years, ALR has operated a landfill on 80 acres of a 302-acre site in the central part of the San Gabriel Valley within the cities of Azusa and Irwindale. The ALR landfill is located in a sand and gravel quarry overlying the Main San Gabriel Groundwater Basin (the Basin), which supplies drinking water for the lion's share of the San Gabriel Valley's more than 1,000,000 residents. The landfill is 23 miles from the notorious San Andreas Fault and within several miles of 4 other faults, including the Raymond and Sierra Madre Faults.

The instant saga began in 1960, when the Los Angeles Regional Water Control Board (Regional Board) first issued WDR's authorizing ALR's predecessor, Azusa Rock and Sand Company, to deposit "ordinary household and commercial refuse" and "nonwater soluble nondecomposable inert solids" at the landfill site. Such waste is nominally classified "nonhazardous" under the current regulatory scheme (see Cal. Code Regs., tit. 23, §§ 2520 (table 2.1), 2523, 2524), but typically contains known contaminants found in many commonly used household and automobile-related products. Leachates from the decomposition of such nonhazardous solid waste can render groundwater unfit for domestic purposes.[2] In fact, pollution of the Basin already poses a significant threat to public health, and consequently,

---

[1] The Porter-Cologne Water Quality Control Act (Porter-Cologne Act) (Wat. Code, § 13000 et seq.) established a coordinated statewide program of water quality control overseen by the State Board and administered by nine regional boards. Under the Porter-Cologne Act, the regional boards are required to formulate water quality control plans for California's numerous water basins, subject to approval by the State Board. Any person or entity discharging or proposing to discharge waste which could affect water quality must file a report with the appropriate regional board. (Wat. Code, § 13260.) The regional board may then prescribe WDR's consistent with water quality objectives. (Wat. Code, § 13263; *City of Sacramento* v. *State Water Resources Control Bd.* (1992) 2 Cal.App.4th 960, 964 [3 Cal.Rptr.2d 643].)

[2] A "leachate" is "any liquid fluid, formed by the drainage of liquids from waste or by the percolation or flow of liquid through waste. It includes any constituents extracted from the waste and dissolved or suspended in the fluid." (Cal. Code Regs., tit. 23, § 2601.)

the Basin is on the United States Environmental Protection Agency's (EPA) national priority list for cleanup under the federal superfund program.

ALR never used the entire 302-acre site for disposal of solid nonhazardous wastes. It limited such deposits to an 80-acre portion of the property.

In November 1984, under authority of the Porter-Cologne Act the State Board promulgated new regulations concerning "water quality aspects of waste discharge to land." (Cal. Code Regs., tit. 23, §§ 2510-2601 (Chapter 15).) The requirements of Chapter 15 were far more stringent than the WDR's under which the landfill had been operating since 1960.

In July 1986, the Regional Board issued Order No. 86-59, which temporarily limited ALR's disposal of nonhazardous solid waste to the 80-acre portion of the landfill site historically used for that purpose, pending submission and approval of WDR's for use of the remainder of the site complying with Chapter 15. Subsequently, ALR sought approval from the Regional Board of WDR's for disposal of nonhazardous solid waste on all 302 acres of the landfill site, proposing a clay liner and leachate collection and removal system to prevent groundwater pollution. At first, the Regional Board rejected ALR's proposal.

ALR submitted revised WDR's proposing additional measures to fortify its waste containment system at the landfill site. The Regional Board then approved the revised WDR's in November 1988 in Order No. 88-133, allowing disposal of Class III waste (nonhazardous solid waste and inert waste) on the whole 302 acres. (Cal. Code Regs., tit. 23, § 2520, table 2.1.)

Respondent, the Main San Gabriel Basin Watermaster (Watermaster), petitioned the State Board for rescission of the order approving ALR's revised WDR's. The petition was supported, among others, by respondents, the Metropolitan Water District of Southern California (MWD) and the Environmental Defense Fund (EDF). In response to concerns expressed by the State Board, ALR proposed additional features to protect against degradation and contamination of groundwater and offered to make sizeable capital contributions to offset the cost of building groundwater treatment plants in the Basin. In October 1989, the State Board denied the Watermaster's petition and approved ALR's project, with amendments to the WDR's. The State Board's order, No. 89-17, included findings: (1) that ALR's proposed containment system, including a groundwater barrier and liner, would "adequately protect water quality"; and (2) that ALR's agreement to pay the costs of constructing treatment plants "would serve as an additional mitigation measure to offset whatever risks to water quality remain[ed]."

The Watermaster, MWD, EDF and the Upper San Gabriel Valley Municipal Water District (Upper District) filed petitions for writ of mandate in the superior court seeking rescission of the State Board's order approving revised WDR's for the expansion of ALR's nonhazardous solid waste landfill from 80 to 302 acres (Super. Ct. No. C743096). The superior court denied relief.

In an unpublished opinion filed January 14, 1991, we reversed. (*Upper San Gabriel Valley Municipal Water District* v. *State Water Resources Control Bd.* (Jan. 14, 1991) B050366.) We held that the near tripling of ALR's solid waste disposal operation was a " 'new project,' " which did not fall within the " 'ongoing project' " or " 'existing facilities' " exemptions of CEQA. Therefore, "[t]he failure to prepare an EIR was a prejudicial abuse of discretion." We directed the superior court to issue a peremptory writ of mandate requiring the State Board to vacate its Order No. 89-17 and "to permit no further expanded dumping by [ALR] until the requirements of CEQA have been fully complied with in a manner consistent with this opinion."

On February 21, 1991, the State Board complied with the writ of mandate issued by the superior court by adopting Order No. 91-01, ordering ALR to refrain from depositing nonhazardous solid wastes in the proposed expansion area pending compliance with the requirements of CEQA. On March 6, 1991, the State Board appended a copy of Order No. 91-01 with its return to the writ of mandate, filed in the superior court. No objections were made to the State Board's showing of compliance with the judgment.

In May 1991, by letter directed to legal counsel for the Watermaster and ALR, the State Board solicited comment, inter alia, on the authority of the State Board to prohibit further discharges at the ALR landfill without going through the CEQA process. The State Board received numerous written responses both for and against prohibiting expanded use of the landfill without full CEQA review. On June 6, 1991, the State Board held a workshop where the subject was discussed at length by the four sitting board members, with input from representatives of ALR, the Watermaster, and other interested organizations and governmental agencies, as well as private citizens.

On June 14, 1991, the State Board notified the parties it would render a decision based on the administrative record developed in connection with the adoption of Order No. 89-17, augmented by the record before the courts during writ of mandate and appellate proceedings challenging that order. The

State Board also invited the parties to submit further written comments on the documents filed during judicial proceedings. The parties, including ALR, did so.

On July 12, 1991, the State Board notified the parties that it would hold a public hearing and special board meeting on July 24, 1991, to review ALR's expansion petition. A copy of a draft order disapproving the project was appended to the notice. The draft order prompted additional correspondence among the State Board and representatives of interested parties.

At the July 24, 1991, hearing, the State Board heard arguments and received additional evidence concerning its proposed disapproval of the proposed landfill expansion. Among other topics covered by comment or testimony were: the continuation of a five-year drought in the Basin and resulting water shortages; expert opinions regarding the durability and effectiveness of the leachate containment system proposed by ALR as a means of protecting against groundwater contamination; the seismic safety of the site for waste disposal purposes; probable sources of organic water contamination in the vicinity of the ALR landfill other than the landfill itself; water contamination presently attributed to landfill leakage; and the City of Azusa's potential legal liability for damages resulting from water contamination. At the conclusion of the hearing, the State Board voted, three to one, to adopt, with minor revisions, the draft order disapproving ALR's revised WDR's for expanded use of the landfill. The order, No. 91-09, made findings: (1) that the site's location over a major drinking water aquifer and its highly permeable geology made it unsuitable for the disposal of waste;[3] (2) that the aquifer was already suffering from serious pollution problems; and (3) that evidence was conflicting whether the design features of the proposed project could reduce the risk to underlying groundwater to an acceptable level. Based on these findings, the State Board concluded that the

---

[3]Current law prohibits issuance of waste discharge permits for disposal of nonhazardous solid waste if the land has been primarily used at any time for the mining or excavation of gravel or sand unless a regional board or the State Board issues a variance based on a finding that the landfill will not pollute or threaten to pollute state public waters. (Pub. Resources Code, § 40060.) It is undisputed that the ALR landfill sits on a sand and gravel quarry, which renders the site particularly inappropriate for waste disposal. Amici curiae (Association of California Water Agencies, San Gabriel Valley Municipal Water District, Three Valleys Municipal Water District, Municipal Water District of Orange County, Natural Resources Defense Council and Miller Brewing Company) have argued, inter alia, that the judgment of the superior court should be upheld on the ground that expansion of ALR's landfill operations would violate Public Resources Code section 40060. The issue was not raised by the appealing parties and consideration of the issue by this court is unnecessary to the resolution of this appeal.

further disposal of nonhazardous solid waste at the ALR landfill posed an unacceptable risk to water quality and should be prohibited.[4]

ALR filed a "Motion for Supplemental Writ of Mandate" in the superior court to compel the State Board to rescind Order No. 91-09 and prepare and consider an EIR before ruling on the merits of ALR's landfill expansion project. The motion was opposed by the State Board, the Watermaster, the Upper District, MWD and EDF. The superior court denied the motion, finding that neither CEQA, nor this court's opinion in the first appeal, nor the superior court's subsequent writ of mandate to the State Board, nor any other statutory provision required the State Board to prepare an EIR prior to disapproving ALR's project. This appeal followed.

*Discussion*

I

■ At the outset we reject, without hesitation, any claim that the State Board's refusal to prepare and consider an EIR before acting on the merits conflicts with any prior judicial order or decision rendered by this court or the superior court in connection with the challenge to the State Board's Order No. 89-17, initially approving ALR's WDR's for expansion of the landfill. In *Upper San Gabriel Valley Municipal Water District* v. *State Water Resources Control Board, supra,* B050366, we considered whether the superior court had erred by declining to address the merits of the petitioners' contention that the State Board had violated CEQA by failing to require an EIR, because the petitioners had not exhausted their administrative remedies, and whether the Regional Board had erred in finding that no EIR was required because the landfill site was an "ongoing project" for purposes of section 15261, subdivision (b) of the CEQA Guidelines (Cal. Code Regs., tit. 14). We neither considered nor expressed any opinion concerning the applicability of CEQA requirements to the State Board's *disapproval* of ALR's revised waste requirements for use of the entire 302-acre site. That question is presented for the first time in this appellate proceeding.

The superior court's writ of mandate—issued to comply with the remittitur issued by this court—commanded the State Board to vacate Order No. 89-17 and to direct ALR not to deposit class III (nonhazardous solid) wastes

---

[4]In its Order No. 91-09, the State Board observed that the ALR landfill was "virtually shutdown" because the original 80-acre nonhazardous solid waste landfill area was filled to capacity, and only inert wastes were permitted to be discharged in the remaining areas. The order under review did not restrict or rescind ALR's right to continue discharging inert wastes.

into any portion of its landfill other than the 80 acres where such disposal was previously permitted "pending compliance with the requirements of the California Environmental Quality Act . . . ." Considered in the context of this court's opinion, the order cannot reasonably be read to compel preparation of an EIR in the event the State Board subsequently determined to disapprove of ALR's landfill expansion project.

ALR's related contention, that the so-called "judicial admissions" of respondents in the prior proceedings mandate an EIR prior to disapproval of ALR's expansion plans, borders on frivolous. The State Board has consistently maintained that an EIR was unnecessary, even when it proposed to approve ALR's expansion proposal. The remaining respondents argued that disapproval *without* an EIR was required by, among other provisions, the Porter-Cologne Act. The necessity of an EIR prerequisite to project approval was argued by respondents as a fallback position. In any event, ALR is hardly in a position to argue that respondents are now bound by positions advanced in the prior action. After all, ALR, having once argued that no EIR was required for project *approval,* now argues that compliance with the full panoply of CEQA procedures must precede *disapproval.*

## II

■ Appellate court decisions analyzing the policies and purposes of CEQA and the Porter-Cologne Act abound,[5] so we focus our review on the narrow issue raised by ALR: whether any provision of CEQA (Pub. Resources Code, § 21000 et seq.) or the CEQA Guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.) requires that the State Board prepare and consider an EIR prior to disapproving on the merits ALR's revised WDR application under the Porter-Cologne Act.

Public Resources Code section 21100 declares, inter alia, that "[a]ll state agencies, boards, and commissions shall prepare, or cause to be prepared by contract, and certify the completion of an environmental impact report on any project *they propose to carry out or approve* which may have a significant effect on the environment." (Italics added.) Nearly identical language is

---

[5]See, for example, *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 393-403 [253 Cal.Rptr. 426, 764 P.2d 278] (discussing CEQA); *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049] (discussing CEQA); *City of Sacramento* v. *State Water Resources Control Bd., supra,* 2 Cal.App.4th at page 964 et seq. (discussing Porter-Cologne Act and CEQA); *Committee for a Progressive Gilroy* v. *State Water Resources Control Bd.* (1987) 192 Cal.App.3d 847 [237 Cal.Rptr. 723] (discussing Porter-Cologne Act and CEQA); *Pacific Water Conditioning Assn., Inc.* v. *City Council* (1977) 73 Cal.App.3d 546 [140 Cal.Rptr. 812] (discussing Porter-Cologne Act and CEQA).

used in Public Resources Code section 21151, obligating all local governmental agencies to prepare or have prepared an environmental impact report on "any project *they intend to carry out or approve* which may have a significant effect on the environment." (Italics added.) Other provisions of CEQA, such as those requiring public notice of public agencies' decisions (Pub. Resources Code, § 21108, subd. (a)) or mitigation measures to avoid significant environmental effects (Pub. Resources Code, § 21002.1, subd. (b)), likewise refer to projects which a public agency "approves," "determines to carry out," or "carries out."

Considered in pari materia (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526]), these and other provisions of CEQA leave little doubt that the requirement of an EIR is not even triggered unless a public agency *proposes to carry out or approve* a project which may have a significant effect on the environment. Any lingering doubt about the Legislature's intent is expunged by Public Resources Code section 21080, subdivision (b)(5), which expressly declares that CEQA *does not apply* to "[p]rojects which a public agency rejects or disapproves." Section 15270, subdivision (a) of the CEQA Guidelines (Cal. Code Regs., tit. 14) echoes subdivision (b)(5) of Public Resources Code section 21080, stating: "CEQA does not apply to projects which a public agency rejects or disapproves."

Two isolated provisions of CEQA and CEQA Guidelines underlie ALR's challenge to the trial court's reliance upon the plain meaning of Public Resources Code section 21080, subdivision (b)(5). ALR points to CEQA Guidelines section 15270, subdivision (b) (Cal. Code Regs., tit. 14), which provides: "This section is intended to allow an initial screening of projects on the merits for quick disapprovals prior to the initiation of the CEQA process where the agency can determine that the project cannot be approved." ALR argues based on this provision that disapprovals without an EIR are limited to the initial screening phase of project review. Ergo, since ALR's WDR's for landfill expansion were originally *approved* by the State Board, the "initial screening" phase is long past and the State Board may no longer take advantage of the "quick disapproval" exemption to deny ALR's application on the merits without preparation and consideration of an EIR.

We see nothing in the language of this section bespeaking a legislative intent to deprive public agencies of their authority under CEQA or CEQA Guidelines to disapprove of a project at any time prior to the initiation of full CEQA review. The terms "initial screening" and "quick disapproval" are not defined for purposes of CEQA Guidelines section 15270, subdivision (b) (Cal. Code Regs., tit. 14), and it can hardly be debated that disapproval

without certification of an EIR would in the normal course of events be "quick" in comparison to disapproval following the necessarily lengthy CEQA review process.

ALR also points to Public Resources Code section 21061 as evidence that CEQA was intended to require preparation and consideration of an EIR prior to approval or disapproval of any project. Section 21061 provides, in relevant part, that an EIR is "an informational document which, *when its preparation is required by this division*, shall be considered by every public agency prior to its approval or disapproval of a project." (Italics added.) This provision is singularly unhelpful to ALR's cause since, on its face, it is limited to situations when an EIR is otherwise required by CEQA. We agree with respondents that Public Resources Code section 21061 merely addresses the possibility that once an agency proposes to carry out or approve a project, and thereafter prepares an EIR, it may conclude based on the information contained therein that disapproval is the wiser course of action.

Assuming the two provisions cited by ALR render ambiguous the otherwise plain, clear language of CEQA's project disapproval exemption (Pub. Resources Code, § 21080, subd. (b)(5)), the legislative history of the exemption offers little support to ALR's limited construction of the statute. At ALR's request, the Legislative Intent Service has prepared a legislative history of Public Resources Code section 21080, subdivision (b)(5). As there is ample precedent for an appellate court's consideration of such documents (see *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 219 [185 Cal.Rptr. 270, 649 P.2d 912]; *Youngblood* v. *Gates* (1988) 200 Cal.App.3d 1302, 1340 [246 Cal.Rptr. 775] [dis. opn. of George, J.]), we have granted ALR's request to take judicial notice of the documents furnished.

Section 21080, subdivision (b)(5) was added to the Public Resources Code as a part of Assembly Bill No. 884 (AB 884), first introduced on March 10, 1977. (Assem. Bill No. 884 (1977-1978 Reg. Sess.) § 2.) According to legislative documents cited in the Legislative Intent Service's summary, but not furnished by ALR, AB 884 was sponsored by the Governor's Office of Planning and Research to expedite the cumbersome, time-consuming procedures for processing applications for development permits and for the preparation and approval of environmental impact reports by state and local agencies. The Legislative Counsel's Digest confirms that the bill was intended to fill the vacuum of laws governing the review and approval by public agencies of development projects. Among other provisions, the bill established specified time limits for approval or disapproval of development projects by any public agency, and provided for automatic approval of proposed projects consequent to an agency's failure to timely act. (Legis.

Counsel's Dig., AB 884, 3 Stats. 1977 (Reg. Sess.) Summary Dig., p. 338.)

Subdivision (b)(5) was not a part of Public Resources Code section 21080 as it was originally proposed. The subdivision was added to the bill by amendments in the Assembly on August 1, 1977. (See AB 884 (1977-1978 Reg. Sess.) § 2, as amended Aug. 1, 1977.) The wording of the subdivision was changed slightly by Senate amendment on August 31, 1977, and remained unchanged throughout the rest of the legislative process. (See AB 884 (1977-1978 Reg. Sess.) § 2, as amended Aug. 31, 1977.) Regarding the addition of subdivision (b)(5) of Public Resources Code section 21080, the Legislative Counsel's Digest offers the following explanatory statement: "Certain types of projects and activities are exempt from the California Environmental Quality Act. [¶] This bill would also exempt projects which a public agency rejects or disapproves." (Legis. Counsel's Dig., *supra*, at p. 339.)

Legislative Counsel's unqualified description of the measure's impact tends to support the same construction of Public Resources Code section 21080, subdivision (b)(5) favored by the plain meaning rule, i.e., that *all* project disapprovals by a public agency are exempt from CEQA review. Such an interpretation also finds support in one of the legislative documents furnished by amici curiae. An enrolled bill report for AB 884 prepared by the Department of Finance, dated September 23, 1977, describes the impact of Public Resources Code section 21080, subdivision (b)(5) as exempting from the provisions of CEQA, without any qualification, "projects which a public agency proposes to reject or to disapprove."[6] In short, nothing in the legislative history of Public Resources Code section 21080, subdivision (b)(5) convinces us the Legislature either did not know or did not mean what it was saying when it declared project disapprovals exempt from the requirements of CEQA. (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227].)

ALR cites several published judicial decisions in support of its contention that the State Board was obligated to prepare and consider an EIR before

---

[6]Amici curiae have also furnished a copy of a letter from the County Supervisors Association of California to Tom Willoughby, consultant for the Assembly Resources, Land Use, and Energy Committee, regarding AB 884. The letter, dated June 28, 1977, suggests that the proposed disapproval exemption (Pub. Resources Code, § 21080, subd. (b)(5)) be modified to provide that CEQA does not apply to "[d]isapproval of an entire proposed project, unless the applicant requests that [CEQA] be applied to the project. . . ." The amendment was advocated as a means of protecting the rights of project permit applicants who believed that an EIR would demonstrate the acceptability of the proposed project. The letter is irrelevant to prove legislative intent absent any showing that the change in AB 884 requested by the County Supervisors Association was actually proposed to or considered by legislators. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 701 [170 Cal.Rptr. 817, 621 P.2d 856].)

disapproving its proposed WDR's for expanded use of the landfill. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 206 [132 Cal.Rptr. 377, 553 P.2d 537]; *International Longshoremen's & Warehousemen's Union* v. *Board of Supervisors* (1981) 116 Cal.App.3d 265, 276 [171 Cal.Rptr. 875].) In the *Wildlife Alive* case, the setting of hunting and fishing seasons by the Fish and Game Commission was found not to be exempt from the requirements of CEQA. (*Wildlife Alive, supra,* at pp. 198-199.) In the *International Longshoremen's & Warehousemen's Union* case, the Board of Supervisors of San Bernardino County was ordered to comply with CEQA before relaxing district emission standards for oxides of nitrogen for certain county facilities. (116 Cal.App.3d at p. 277.) In each case, however, preparation of an EIR was found necessary because there was the potential for a significant adverse environmental impact caused by affirmative governmental agency action altering the status quo. (*Wildlife Alive, supra,* at p. 206; *International Longshoremen's and Warehousemen's Union, supra,* at p. 276.) None of the cases cited by ALR required preparation of an EIR by a public agency prerequisite to project disapproval, or other action maintaining the status quo.

ALR argues that the public policies underlying CEQA are best advanced by requiring an EIR in this case. Ergo, preparation of an EIR would: (1) ensure consideration of mitigation measures and evaluation of no-project and other feasible alternatives (Pub. Resources Code, §§ 21002, 21002.1; Cal. Code Regs., tit. 14, § 15126, subds. (c), (d)(2); *Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 564 [276 Cal.Rptr. 410, 801 P.2d 1161]); (2) require resolution of public controversy and disagreements among experts (Cal. Code Regs., tit. 14, § 15064, subd. (h)(1) and (h)(2); *City of Carmel-by-the-Sea* v. *Board of Supervisors* (1986) 183 Cal.App.3d 229, 249 [227 Cal.Rptr. 899]); (3) ensure public participation in the decisionmaking process (Cal. Code Regs., tit. 14, § 15201; *Environmental Planning & Information Council* v. *County of El Dorado* (1982) 131 Cal.App.3d 350, 354 [182 Cal.Rptr. 317]); and (4) facilitate public oversight of the actions of the State Board (Cal. Code Regs., tit. 14, § 15003, subd. (e); *Sundstrom* v. *County of Mendocino* (1988) 202 Cal.App.3d 296, 311 [248 Cal.Rptr. 352]).

In making its various public policy arguments, ALR generally assumes that disapproval of the landfill expansion project will result in equally serious adverse environmental consequences, including highway degradation, traffic congestion, fuel consumption and air pollution, due to the rerouting of waste previously disposed of at ALR's landfill. Whether or not true, the same point could be made for many forms of government inaction. Yet the Legislature has determined for reasons of policy to exempt project disapprovals from environmental review under CEQA. Our state legislators

evidently concluded that public agencies should not be forced to commit their resources to the costly and time-consuming environmental review process for proposed private development projects slated for rejection, whatever the reason for agency disapproval. This court does not sit in judgment of the Legislature's wisdom in balancing such competing public policies. (*Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 376 [267 Cal.Rptr. 569, 787 P.2d 976].)[7]

### III

ALR contends that the State Board's action deprived it of a fair and impartial hearing and the opportunity to present evidence for the agency's consideration. This argument is belied by an administrative record memorializing years of scrutiny by the Regional and State Boards of revised WDR's for expansion of ALR's nonhazardous solid waste landfill. ALR is free to challenge the State Board's exercise of discretion under the standards of the Porter-Cologne Act, and is apparently doing so in another action currently pending in the superior court.[8] However, the legality of the State Board's action under Porter-Cologne is beyond the scope of the issues raised by the motion for supplemental writ of mandate from which the instant appeal is taken.

Accordingly, the judgment of the superior court denying ALR's motion for a supplemental writ of mandate is affirmed.

Gates, Acting P. J., and Lord, J.,* concurred.

The petition of real party in interest for review by the Supreme Court was denied May 13, 1993.

---

[7]In the respondent's brief submitted on behalf of the Watermaster, MWD, the Upper District, and EDF, it is asserted that the State Board's order rejecting WDR's for expansion of ALR's landfill was categorically exempt from the CEQA review process under exemptions promulgated by the Secretary of Resources for actions taken by regulatory agencies for the maintenance, restoration, enhancement or protection of natural resources and the environment. (Pub. Resources Code, § 21084, subd. (a); Cal. Code Regs., tit. 14, §§ 15307, 15308; cf. *Pacific Water Conditioning Assn., Inc.* v. *City Council, supra,* 73 Cal.App.3d at p. 557.) Our holding that the State Board's order was exempt under Public Resources Code section 21080, subdivision (b)(5) makes it unnecessary to address this contention.

[8]According to respondents, ALR filed a petition for writ of mandate challenging the State Board's decision under the Porter-Cologne Act, and the state and federal Constitutions. (Browning Ferris Industries, Inc. v. State Water Board (Super. Ct. L.A. County, No. BS010509).) That action has been stayed pending the outcome of this appeal.

*Judge of the Municipal Court for the Downey Judicial District sitting under assignment by the Chairperson of the Judicial Council.